# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

DUNKIN' DONUTS FRANCHISED
RESTAURANTS, LLC, DD IP HOLDER, LLC                  Civil Action No. 12-cv-2010
BASKIN-ROBBINS FRANCHISED
RESTAURANTS, LLC and DB REAL ESTATE
ASSETS I, LLC,

                        Plaintiffs,

v.

CLAUDIA I, LLC, MANFRED P. MAROTTA
And LYNNE K. MAROTTA,

                        Defendants.

CLAUDIA I, LLC, MANFRED P. MAROTTA
And LYNNE K. MAROTTA,

                        Marottas

v.

SPRING HILL REALTY, INC.
THIRD DUNKIN DONUTS REALTY, INC.

                        Third Party Defendants

## ANSWER OF PLAINTIFFS AND THIRD PARTY DEFENDANT THIRD DUNKIN' DONUTS REALTY, INC. TO DEFENDANT'S COUNTERCLAIM AND THIRD PARTY COMPLAINT

Plaintiffs Dunkin' Donuts Franchised Restaurants, LLC, DD IP Holder, LLC, Baskin-Robbins
Franchised Restaurants, LLC, DB Real Estate Assets I, LLC, and Third Party Defendant Third
Dunkin' Donuts Realty, Inc., by and through their counsel, answer the allegations set forth in the
Defendant's  Counterclaim and Third Party Complaint as follows:

1.      To the extent that Defendants allege factual allegations or legal arguments, in response to
        the Complaint, these allegations and arguments are denied.

2.      Denied as stated. Claudia I, LLC is the sole franchisee under the Franchise Agreement.
        Mr. and Mrs. Marotta are guarantors.

3.      Denied as stated. To the contrary, the Store, which is the subject to this litigation, is located at 505 Old York Road, Jenkintown, PA (the "Jenkintown Store") and is operated by the Claudia I, LLC.

4.      Denied as stated. Claudia I, LLC has operated this Store since July 2009, when it entered into a Franchise Agreement dated July 16, 2009.

5.      Admitted that the Jenkintown Store is operated at a location where the prime landlord is Spring Hill Realty, Inc. ("Spring Hill"), maintaining its principal place of business at 528 Main Street, Suite 200, Harleysville, Montgomery County, Pennsylvania.

6.      Admitted that TDDR entered into a lease with Spring Hill, which lease is currently being re-negotiated. The current lease term is on extension and expires in July 2013.  ("Prime Lease")

7.      Denied that TDDR maintains a principal place of business at 14 Pacella Park Drive, Randolph, MA 02368 and, in Article 18 of the Prime Lease. Admitted that it has designated that address as being the address where it will accept service of all notices, however, the address was changed.

8.      Denied that TDDR entered into a sublease with the Marottas, which sublease expires in 2022.  ("Dunkin Lease").

9.      Admitted that the Marottas are not parties to the Prime Lease.

10.     Denied as a conclusion of law that the Marottas are the intended third party beneficiaries of the Prime Lease.

11.     Denied as a conclusion of law that the Marottas have been assigned TDDR's right and obligations under the Prime Lease in the Dunkin Lease.

12.     Denied as a conclusion of law that by virtue of the assignment, the Marottas stand in TDDR's shoes in the Prime Lease.

13.     Admitted that The Prime Lease, in Article 1.1(o) defines the Permitted Use as being the "operation of a quick service restaurant (for both on and off premises consumption) consisting of three (3) distinct trademarks for the manufacture and sale of products typically sold in Dunkin' Donuts, Baskin Robbins, and Togo's locations."

14.     Admitted that plaintiffs and TTDR do not maintain any corporate run stores where they sell any products under the TOGO's brands or trademarks. To the extent plaintiffs are operating entities, they are authorized and do from time to time operate locations.

15.     Plaintiffs and TTDR cannot respond to the allegation that the Dunkin's Franchise Disclosure Document, at pg.  1, states that it does not maintain any corporate run stores which manufacture or sell any products under the Dunkin' Donuts, Baskin Robbins, and Togo's brands and that they "do not conduct any business activity other than franchising

Dunkin' Donuts stores."  It is unclear as to the date of the Franchise Disclosure Statement.

16.     The Prime Lease speaks for itself as to whether in Article 11 of the Prime Lease, Spring Hill has consented to the assignment and/or subletting of the Premises by TDDR to a franchisee.

17.     The Prime Lease speaks for itself as to whether Spring Hill has provided a blanket approval for the assignment or subletting of the Prime Lease to the entities or individuals identified in paragraph 11.1 of the Prime Lease.

18.     The Prime Lease speaks for itself as to whether Article 11 of the Prime Lease, paragraph 11.1, specifically provides TDDR the right to assign or sublet the Prime Lease to any of its subsidiaries or any of its "corporate qualified franchisee that has met the standards for franchise operation."

19.     Denied as a conclusion of law that the Marottas are a "corporate qualified franchisee that has met the standards for franchise operation" as per the definition contained in the Prime Lease.

20.     Denied that the Marottas as a conclusion of law are third party beneficiaries of the Prime Lease or that the Marottas have standing to seek damages for fraud and conspiracy being committed by the collusion of Spring Hill and Dunkin that has a direct detrimental effect upon the Marottas.

21.     Denied that as a conclusion of law that the Marottas are third party beneficiaries of the Prime Lease or that the Marottas have privity to seek enforcement of the Prime Lease and to seek damages for Spring Hill and Dunkin's breach of their obligations under that Lease.

22.     Denied that as a conclusion of law that the Marottas as the intended third party beneficiary identified in Paragraph 11.1 of the Prime Lease, the Marottas have standing to seek enforcement of the Prime Lease.

23.     Admitted that the Marottas have attempted to compel Spring Hill to comply with the terms of Article 17.4 of the Prime Lease.

24.     Denied that Spring Hill has refused and continues to refuse to comply with Article 17.4 of the Prime Lease.

25.     The leases speak for themselves whether the square footage representations contained in Paragraph 1.1(p) of the Prime Lease are specifically incorporated into the Dunkin Lease at Paragraph 1.6.

26.     Denied that a misrepresentation exists regarding the actual square footage occupied by the Marottas or that it relates to a material term of the Dunkin and Prime Leases.

27.     Admitted in the abstract that the amount of square footage being leased by the Plaintiff and Marottas has a direct impact on the amount of Common Area Maintenance ("CAM") that the Marottas are required to pay but denied in the actual charges to the Marottas.

28.     Denied that TDDR's and Spring Hill  misrepresented the amount of square footage actually occupied by the Marottas. Denied that the Marottas are being required to pay a larger share of the CAM charge that would be required if the square footage were properly stated.

<u>The Prime Lease</u>

29.     The Prime Lease, Article 1.1(d) speaks for itself as to whether the common areas are "parking areas, access roads, sidewalks, and landscaping in the shopping Center intended for the non-exclusive, general use of tenants, other occupants of the Shopping Center and the general public."

30.     The Prime Lease, Article 1.1(h), speaks for itself whether it defines the Landlord's floor area as the "aggregate amount of square feet of *leasable floor area* in the Shopping Center, and is currently 29,384 square feet."

31.     The Prime Lease speaks for itself whether Article 7.2(a) of the Prime Lease provides that the tenant shall reimburse the landlord for its pro-rata share of "real property taxes assessed on the tax parcel on which the Premises are located."

32.     Article 7.2(b) of the Prime Lease speaks for itself whether the tenant's pro-rata share shall be based upon the amount of square footage of the Premises.

33.     Article 1.1(p) of the Prime Lease speaks for itself whether the Premises is "that portion of the Landlord's building designated "Premises" on the site plan attached to Exhibit A, in the configuration shown on the Site Plan, and with square footage as follows:

|                |                   |
|----------------|-------------------|
| Ground Floor:  | 3,100 square feet |
| Basement:      | 1,500 square feet |
| Second Floor:  | 484 square feet"  |

34.     Admitted that according to the Prime Lease, the tenant occupies 5084 square feet.

35.     Admitted that Article 17.1 provides that the Landlord shall be responsible for maintenance of common areas.

36.     The Prime Lease speaks for itself whether in defining the tenant's pro-rata share of the CAM charges, Article 17.2(a) of the Prime Lease provides that "the tenant shall reimburse Landlord for Tenant's pro-rata share of the costs and expenses necessary for the maintenance and operation of the Common Area of the Shopping Center[.]"

37.     The Prime Lease speaks for itself whether in Article 17.2(b) provides that CAM expenses shall not include any capital expenditures as defined by the IRS code.

38.     The Prime Lease speaks for itself whether tenant's pro-rata share of the CAM expense is calculated based upon the square footage actually possessed by the tenant.

39.     The Prime Lease speaks for itself whether Article 17.4 provides that a tenant may conduct a square footage audit at its own cost.

40.     The Prime Lease speaks for itself whether Article 17.4 provides that where "the Common Area Maintenance Expenses are found to be overstated by 5% or more, and as a result Tenant has over paid for Tenant's pro rata share of such expenses by more than fifteen hundred Dollars ($1500), Landlord shall bear the cost of such inspection, excluding the cost of travel and lodging.  Landlord shall promptly refund to Tenant any overpayment[.]"

41.     Denied that the CAM overpayments made by the Marottas far exceed the sum of $1500.

42.     Denied that Spring Hill has been charging Capital Expenditures as CAM expenses as the knowledge to answer this allegation is solely within the knowledge of third parties.

43.     Denied that improper CAM expenses have been charged to the tenants as such information is solely within the knowledge of third parties.

44.     Denied that Spring Hill has charged improper business operation taxes to the tenants.

45.     Admitted that the Marottas have issued demands for reimbursement on several occasions to no avail.

46.     Answering defendants are without knowledge whether Spring Hill has refused to provide any details or documentation regarding the expenditures being charged as CAM.

The Dunkin Lease

47.     Denied that the Marottas executed a document that Dunkin/TDDR calls a "sublease" for the Jenkintown Store. To the contrary, Claudia I, LLC assumed the sublease from its Seller.

48.     Denied that the document between TDDR and Claudia I, LLC, is called an "AD QSR Lease of Dunkin' Donuts/Baskin Robbins" (the "Dunkin Lease"), although it is admitted that this documents was assumed by Claudia I, LLC.

49.     Denied as to the characterization that the Dunkin Lease references and incorporates all of the terms of the Prime Lease.

50.     The Dunkin Lease speaks for itself whether any claims that the Marottas may have against the Prime Landlord, Spring Hill Realty, must be raised directly with Spring Hill.

51.     Admitted that the Marottas have attempted to raise these issues directly with Spring Hill to no avail.

52.     Admitted that the Marottas have also raised these issues with Dunkin, but the Marottas have not resolved their issues.

53.     Denied as this is a legal conclusion whether Spring Hill has refused to take any action on the square footage discrepancy claiming that the Marottas don't have standing to seek enforcement of Paragraph 17.4 of the Prime Lease.

54.     Denied as a legal conclusion whether Spring Hill states that TDDR is the only party entitled to seek enforcement of the terms of the Prime Lease.

55.     Admitted that Marottas have asked TDDR to seek enforcement of Paragraph 17.4 against Spring Hill for improper CAM charges and overpayment of CAM charges based upon the incorrectly stated square footage.

56.     Denied that TDDR and Dunkin have refused.

57.     Admitted that Article 14 of the Dunkin Lease further provides that termination of the Franchise Agreement can also result in termination of the Lease.

### Square Footage Audit

58.     Denied that in late 2010, during a discussion with Dunkin's Operation Management and Construction Management team, the Marottas realized that there might be some issue regarding the square footage calculations represented in the Prime Lease and the Dunkin Lease as this information is solely within the knowledge of the Marottas.

59.     Denied that the Third Party Defendants ordered and received a completed square footage audit in February 2011 that confirmed that the actual square footage of the lease premises was overstated and the actual square footage of the shopping center square footage was understated.

60.     Denied that the Third Party Defendants presented the square footage audit to both Spring Hill and Dunkin in August 2011.

61.     Denied that an audit by the Third Party Defendants revealed that the Landlords (both Dunkin and Spring Hill) had *understated* the total square footage of the shopping center.

62.     Answering parties are without sufficient knowledge or information to conclude that the total square footage of the shopping center is stated to be 29, 384 in the Prime Lease but the rent roll prepared by Spring Hill Realty shows a total square footage of 30,094.

63.     Denied that the audit also revealed that the Landlords (both Dunkin and Spring Hill) had *overstated* the square footage actually occupied by the Marottas.

64.     The Lease speaks for itself whether the Marottas are occupying 3167 square feet on the first floor.

65.     Denied as the information necessary to answer whether the Marottas retained a surveyor who measured the leased premises' square footage to be 2782.6 for the first floor only is solely within the control of the Marottas..

66.     Denied that the difference in square footage is 384.4 square feet, which represents more than a 10% difference.

67.     Admitted that Spring Hill and Dunkin state that the square footage is to be calculated from the outside walls of the leased premises.

68.     The Prime Lease speaks for itself whether Article 1.1(h) of the Prime Lease defines the "Landlord's Floor Area" as being the "aggregate amount of square feet of leasable floor area in the Shopping Center."  Denied that the usual and customary definition for calculation of common area maintenance  requires the calculation of square footage from the internal walls.

69.     Denied as a matter of law that the effect of these misrepresentations is that the Marottas have been charged a larger pro-rata share of the CAM expense that they should be required to pay.

70.     Denied as a matter of law that the Marottas have been paying this larger share without refund since July 2009.

71.     Denied as a matter of law that the Marottas have also been forced to pay a pro-rata share of several improper CAM expenditures.

72.     Denied as a matter of law that the Marottas have also been forced to pay for various business operation taxes charged to Spring Hill that are not properly chargeable to the tenants under either the Prime Lease or Dunkin Lease.

73.     Denied as to its accuracy but admitted that the Marottas' auditor also raised several other issues relating to CAM expenses which the auditor believes should not have been properly charged to the tenants as a CAM expense, such as:

    a.      Tenants are improperly being charged for trash/dumpster removal;

    b.      Repairs to glass/new fire door should have been a landlord expense;

    c.      Tenants are only responsible for real estate taxes and should not have been charged a business privilege tax.

74.     Admitted that in a letter dated August 22, 2011, the auditor also identified several other areas where Spring Hill allegedly had failed to provide appropriate documentary back up for charges being assessed against the Tenants.

75.     Admitted that the Counterclaimant forwarded the Audit to Spring Hill and Dunkin's leasing department. Denied that the Counterclaimant heard nothing for many months.

76.     Denied that Spring Hill refused to deal with any of the issues and has refused to correct the square footage overstatement.

77.     Denied that TDDR and Dunkin also refused to respond or discuss the issue despite the Marottas' numerous requests.

78.     Admitted that TDDR, Dunkin and Spring Hill have not refunded any amounts to the Marottas for overpayments made on CAM.

79.     Admitted that in early 2012, TDDR/Dunkin's leasing department advised the Marottas that they were in the midst of lease re-negotiations with the Prime Landlord, Spring Hill.

80.     Admitted that the Marottas, independently and through their attorney, repeatedly asked Dunkin if they could participate in the lease re-negotiations.

81.     Admitted that the Marottas, independently and through their attorney, repeatedly provided Dunkin with information to assist in the lease re-negotiations but denied that the information was for similar space.

82.     Admitted that the information consisted of the square footage audit report, details of inappropriate CAM charges being assessed, proof that other comparable commercial premises within the Jenkintown area were being offered at $18-22 per square foot, and proof that Spring Hill itself was advertising its own price per square foot for the same shopping center as $18-22 per square foot.

83.     Denied that the Lease requires that Dunkin and the Marottas pay $36 per square foot for an overstated CAM percentage.

84.     Denied that $36 per square foot for this location and type of commercial space far exceeds the fair market price.

85.     Admitted that the Marttas' online/internet research revealed that Spring Hill was leasing space in this same shopping center for $18 to $22 per square foot, however, denied that it is similar space.

86.     Admitted that the Marottas have provided copies of the rental listings and advertisements to TDDR/Dunkin.

87.     Denied that the Marottas have also provided listings for comparable commercial locations within the same geographical location to Dunkin.

88.     Denied that Dunkin has refused to re-negotiate a lower price for the rent or raise any of these issues with Spring Hill.

89.     Admitted that Dunkin has presented the Marottas with a Lease Modification Addendum that requires the Marottas to waive all of their claims against Spring Hill for CAM over payments.

90.     Denied that Dunkin/TDDR have no legitimate business justification for refusing to negotiate a new lease with the correct square footage reflected therein.

91.     Denied that Dunkin/TDDR have no legitimate business justification for refusing to negotiate a new lease at fair market rent as is currently being advertised by Spring Hill.

92.     Denied that Dunkin/TDDR have no legitimate business justification for refusing to negotiate a new lease with a new landlord for a new location when such locations exist and the Marottas have agreed to incur the cost of the fit out of such new location.

93.     Admitted the Marottas have also provided copies of the audit alleging that they are being over charged for CAM expenses and that there are numerous CAM expenses that the Prime Landlord should not be assessing to the Tenants.

94.     Denied as Answering defendants have insufficient knowledge whether Spring Hill has refused to re-calculate and reimburse to the Marottas' overpayments of the pro rata CAM expense despite proof that the square footage being used in the calculations is incorrect.

95.     Denied that Dunkin/TDDR have refused to take any steps to re-negotiate the lease to make sure that the CAM percentage is corrected, to ensure that the square footage is accurately reflected, or to make sure that they are getting a fair market value for rent.

96.     Denied that Dunkin/TDDR aligned themselves with the Prime Landlord, Spring Hill, rather than its own franchisee.

97.     Denied that Dunkin/TDDR have no business justification for aligning themselves with the Prime Landlord as the franchisee is wrongfully holding over on the lease.

98.     Denied that Dunkin/TDDR are permitting Spring Hill to steal from the Marottas.

99.     Denied that Dunkin/TDDR are permitting the Prime Landlord/Spring Hill to steal from the Marottas.

100.    Denied that Dunkin/TDDR have colluded with Spring Hill to harm the Marottas in refusing to compel Spring Hill to correctly state the square footage, re-fund excess CAM already paid by the Marottas as expressly required by the terms of the Lease, and by refusing to ensure that the Marottas are provided with a Lease which accurately reflects the fair market value rental for this location.

101.    Denied that Dunkin/TDDR are colluding with Spring Hill against the Marottas.

102.    Denied that the Marottas have been harmed and continue to suffer harm as a direct and proximate result of Dunkin/TDDR's and Spring Hill's actions and collusion.

## COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT I
### (DUNKIN, TDDR and SPRING HILL)
#### (Fraud)

103.    Answering counterclaim and third party defendants reiterate their previous answers to the Third Party Complaint as though recited herein verbatim and at length.

104.    Admitted that Spring Hill Realty, Inc. is named as the Third Party Defendant and maintains its principal place of business at 528 Main Street, Suite 200, Harleysville, Montgomery County, in the Commonwealth of Pennsylvania.

105.    Denied that Leo Orloski is a named party.

106.    Denied that Brian Husberger is a named party.

107.    Admitted that Spring Hill Realty ("Spring Hill") is the prime landlord that has leased a portion of its shopping center located at 505 Old York Road, Jenkintown, PA to Third Dunkin Realty, Inc. ("TDDR"). Denied that TDDR leased it to the Marottas.

108.    Admitted that TDDR is a domestic profit corporation registered to do business in Massachusetts, but denied that it maintains a principal place of business at 14 Pacella Park Drive, Randolph MA 02368.  Admitted that this is also the address listed in the Prime Lease as being the location where notices and service of process will be accepted.

109.    Denied that Jon Luther is the president of TDDR.

110.    Admitted that Jennie Wilson was the vice treasurer of TDDR who signed the Prime Lease as vice president of TDDR in February 2002.

111.    Denied that the Spring Hill and Dunkin Leases clearly misrepresent the actual square footage being occupied by the Marottas.

112.    Denied that Marottas have obtained an independent audit that clearly demonstrates that the total square footage of the shopping center as represented in the lease is incorrect by Spring Hill's own calculations.

113.    Denied that the Marottas have obtained an independent audit that clearly demonstrates that the actual square footage being leased by the Marottas as represented in the Lease is being over stated.

114.    Denied that the Marottas' audit clearly shows that the Marottas are being overcharged on the pro rata share of the CAM expenses being assessed against them as not all of the Marottas are subtenants.

115.    Denied that the Marottas' audit also clearly shows that Spring Hill is improperly charging certain landlord expenses as CAM charges as not all of the Marottas are subtenants.

116.    Denied that Spring Hill and Dunkin and TDDR have been provided with clear and convincing evidence that they are being overcharged for CAM and being charged improperly on certain expenses. Denied Spring Hill and  Dunkin have refused to correct the square footage or expense issue.

117.    Denied that both Dunkin and Spring Hill have refused to make any corrections whatsoever.

118.    Admitted that on numerous occasions, the Marottas have asked for meetings with Dunkin/TDDR's counsel or senior management to bring this issue to their attention and to explain the damages that they are suffering as a result.

119.    Denied that Dunkin has refused to have such a meeting or to discuss the amicable resolution of the concerns being raised by the Marottas.

120.    Denied that Dunkin and TDDR have refused to consider the other commercial lease alternatives available in the area. Denied that these were dismissed without any further explanation.

121.    Admitted that Dunkin and TDDR have refused to hold Spring Hill accountable for improper CAM charges being assessed against the Marottas and have required the Marottas to pay these without question. The Marrottas refuse to pay the CAM charges.

122.    Denied that Dunkin failed to raise these issues with the Prime Landlord during the lease negotiations.

123.    Denied that Dunkin refused to re-negotiate the lease with Spring Hill to ensure that their sub-tenant, the Marottas, will be charged fair market value on the rent.

124.    Admitted that the Marottas have provided numerous other alternative leasing, including but not limited to providing listings for other, commercial spaces for Dunkin/TDDR to lease, but denied that these alternatives are comparable.

125.    Denied that these other commercial locations are comparable, if not better suited for a franchise location, and are at fair market rents.

126.    Denied that Dunkin refused these options claiming that they are not comparable without doing any further investigation or providing any details as to why these spaces are unacceptable.

127.    Denied that the Marottas have been damaged and continue to suffer damages as a direct and proximate result of the intentional misrepresentations contained in the Leases and Spring Hills and Dunkin's and TDDR's intentional refusal to correct the misrepresentations contained in the Leases.

128.    Denied that Dunkin, TDDR and Spring Hill are working together to permit the CAM and rent overcharges to continue and go unquestioned and to steal from the Marottas.

WHEREFORE, the Counterclaim should be dismissed.


## COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT II

### (DUNKIN, TDDR and SPRING HILL)
### (Civil Conspiracy)

129. Answering counterclaim and third party defendants reiterate their responses to the averments of fact set forth in paragraphs 1 through 128 of the Counterclaim/Third Party Complaint as though recited herein verbatim and at length.

130. Answering defendants are without knowledge whether Spring Hill owns the premises being leased to the Marottas pursuant to the Spring Hill and Dunkin Lease.

131. Answering defendants are without knowledge whether Spring Hill is aware of the amount of square footage being leased to the Marottas.

132. Answering defendants are without knowledge whether Spring Hill is aware of the total amount of square footage of their property.

133. Answering defendants are without knowledge whether Spring Hill has intentionally and purposely overstated the pro rata share of the Marottas' CAM responsibility.

134. Denied that Spring Hill has been notified of the square footage discrepancy and has refused to correct the error in the Prime Lease.

135. Denied that Dunkin and TDDR have refused to raise the issue with Spring Hill or correct the issue in the Dunkin Lease.

136. Admitted that Dunkin' directed the Marottas to obtain the square footage audit and raise the matter directly with Spring Hill.

137. Answering defendants are without knowledge whether Spring Hill has refused to deal with the Marottas on the square footage issue claiming that the Marottas have no standing to challenge any terms in the Prime/Prime Lease.

138. Denied that any shell game is occurring.

139. Admitted that the Prime Lease is currently in the process of being re-negotiated as it is to be renewed in July 2013, rather than January 2013.

140. Admitted that the Marottas have asked Dunkin and TDDR to raise the CAM and square footage issues with Spring Hill during the re-negotiation process.

141. Admitted that the Marottas have asked Dunkin and TDDR to consider other commercially suitable locations and Dunkin' and TDDR have refused.

142. Admitted that the Marottas have asked Dunkin and TDDR to negotiate a fair market rent for the Premises. Denied that Dunkin' refused.

143. Admitted that Spring Hill, TDDR and Dunkin have been provided with an audit that allegedly shows that the Landlord's square footage calculations are incorrect.

144. Denied that Spring Hill, TDDR and Dunkin have intentionally refused to act in a commercially reasonable and customary way even though they have been provided with evidence demonstrating that their square footage calculations are incorrect.

145. Denied that Spring Hill, TDDR and Dunkin have acted in concert to perpetrate a fraud upon the Marottas.

146. Denied that together, Dunkin, TDDR and Spring Hill have colluded together to enter into an unfavorable lease that negatively impacts the Marottas, have refused to abide by the terms of the Prime Lease.

147. Denied that rather than protecting its franchisee, Dunkin has intentionally and purposefully taken steps to guard and protect the Landlord, Spring Hill, by requiring the Marottas to sign a lease amendment which provides a full release and waiver of claims to Spring Hill even though Spring Hill is not a party to the "sublease."

148. Denied that together, Dunkin, TDDR and Spring Hill have ensured that the Marottas are effectively deprived of any ability to question the square footage or the amount or nature of the CAM charges.

149. Denied that together, Dunkin, TDDR and Spring Hill have fraudulently misrepresented the total square footage being occupied by the Marottas resulting in the Marottas being held liable for a higher pro rata share of the CAM expense.

150. Denied that together, Dunkin, TDDR and Spring Hill have refused to correct these misrepresentations either through a lease amendment or through the formation of a new lease that would fairly and accurately reflect the proper square footage.

151. Admitted that Dunkin has requested the Marottas to sign a lease modification that contains a full release and waiver of claims for Spring Hill's benefit discharging them from any liability for re-payment of any CAM overpayments previously made by the Marottas. The remainder of this allegation is denied.

152. Denied that the Marottas have been harmed and continue to suffer damages as a direct and proximate result of the concerted actions of Spring Hill, TDDR and Dunkin.

WHEREFORE, this counterclaim should be dismissed.

<u>COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT III</u>
(DUNKIN, TDDR and SPRING HILL)
(Breach of Contract)

153.   Answering counterclaim and third party defendants reiterate their responses to the averments of fact set forth in paragraphs 1 through 152 of the Counterclaim/Third Party Complaint as though recited herein verbatim and at length.

154.   Denied that the Marottas purchased a business from the prior franchisee for the Jenkintown location in July 2009. To the contrary, Claudia I, LLC bought the business from the prior franchisee. The remainder of this allegation is denied.

155.   Admitted that Claudia I, LLC, as a part of that transaction, they were assigned the rights under a document called "AD QSR Lease of Dunkin Donuts/Baskin Robbins" between Third Dunkin' Donuts Realty, Inc. and Let them Eat Cake, Inc. The remainder of this allegation is denied.

156.   Admitted, that the initial term of the Prime Lease is for a term of 10 years, starting in February 2002 and terminating in January 2013. By way of further answer, it has been extended by six months.

157.   Admitted that the "sublease" with TDDR, as assigned to DB Real Estate Assets I, LLC, is for a term of 20 years, starting in December 2002 and terminating in December 2022.

158.   Denied as stated that Dunkin and TDDR maintain that the agreement between TDDR and the franchisee is a sublease. To the contrary, TDDR is not in privity with any of the Marottas.

159.   Denied as a conclusion of law that TDDR assigned all of its rights and responsibilities under the Prime Lease to the Marottas.

160.   Denied in the Dunkin Lease, TDDR assigned the entire term of the Prime Lease to the Marottas.

161.   Denied as a conclusion of  law the Marottas stand in TDDR's shoes with respect to Spring Hill in the Prime Lease.

162.   Denied as a conclusion of law that any of the  Marottas are the assignees of TDDR.

163.   Denied as a conclusion of law that Spring Hill committed fraud, misrepresentations or material breaches of the Prime Lease.

164.   Denied as a conclusion of law that the breaches of the Prime Lease were caused solely by Spring Hill's own actions and material misrepresentations.

165.   Denied that TDDR required the Marottas to perform any obligations.

166.   Denied that TDDR required the Marottas to perform any obligations.

167.     Denied that TDDR required the Marottas to perform any obligations.

168.     Denied that TDDR required the Marottas to perform any obligations.

169.     Admitted that Addendum 26 to the Dunkin Lease provides that "this Lease and all of the rights of the parties hereunder are subject to and subordinate to the Prime Lease."

170.     Admitted that Addendum 26(a) to the Dunkin Lease provides that "Tenant shall perform all affirmative covenants and obligations under the Prime Lease and shall refrain from performing any act which is prohibited by the negative covenants of the Prime Lease."

171.     Admitted that Addendum 26(b) to the Dunkin Lease specifically provides that "All benefits inuring to Landlord as the tenant under the Prime Lease are retained by Landlord unless specifically granted to Tenant under this Lease."

172.     Admitted that  Paragraph 3 provides that "<u>Successors and Assigns</u>.  The rights, interests and benefits granted hereby shall inure to the benefit of and be binding upon, as the case may be, the parties hereto and their respective successors, heirs and assigns."

173.     Admitted that the October 30, 2002 Amendment to the Prime Lease, at paragraph 2(b) amends section 1(p) of the lease relating to the leased premises to change the square footage being leased from 3,152 to 3,167.

174.     Admitted that the October 30, 2002 Amendment was signed by Jayne Fitzpatrick, VP Finance for TDDR and Leo Orloski, president of Spring Hill Realty, Inc.

175.     Denied as a matter of law that the Dunkin Lease operates as an assignment of all of TDDR and Dunkin's rights and responsibilities under the Spring Hill (Prime Lease) to the Marottas.

176.     Denied as a matter of law by virtue of this assignment, the Marottas has standing to name Spring Hill as a party to this action.

177.     Denied as a matter of law that by virtue of this assignment, the Marottas has standing to seek enforcement of Article 17.4 contained in the Prime Lease.

178.     Admitted that Spring Hill has been put on actual notice that the square footage contained in its Lease with Dunkin allegedly misrepresents the space actually being occupied by the Counterclaimant.

179.     Denied that both the Prime Lease and Dunkin Lease require that upon presentation of proof that the square footage contained in the lease is incorrect resulting in a CAM overpayment of more than 5%, the overpayments made by the Marottas will be refunded as this mischaracterizes the written document.

180.     Denied that both Dunkin and Spring Hill have been provided with conclusive proof that the Marottas have been overcharged for their CAM obligations by more than 5%.

181.    Denied that both Dunkin and Spring Hill have also been provided with conclusive proof that the Marottas have been charged for CAM expenses that are not appropriate.

182.    Denied that both Dunkin and Spring Hill have refused to honor the terms of the Lease or to even discuss these discrepancies with the Marottas.

183.    Admitted that the Marottas have repeatedly sought a meeting with Dunkin representatives to address these overpayments and overstatements of the square footage.

184.    Denied that Dunkin has refused such a meeting.

185.    Denied that this meeting would have been an opportunity for Dunkin to avoid litigation on this matter.

186.    Denied that Dunkin and TDDR have threatened that the cost of their counsel fees alone would ruin the Marottas and put them out of business.

187.    Denied that Dunkin and TDDR have also threatened to revoke the Franchise Agreements granted for the Marottas two other stores being operated in Perkasie and Philadelphia, PA.

188.    Denied as a matter of law that Spring Hill has violated the Dunkin and Prime Lease by charging amounts to the Marottas that are not properly chargeable as CAM and by refusing to refund overpayments of CAM made by the Marottas.

189.    Denied that Dunkin has violated the Dunkin Lease by charging improper CAM amounts to the Marottas even though the Marottas have repeatedly questioned the payment of these and the validity of the CAM charges and expenses.

190.    Denied that Spring Hill has violated Article 17.4 of the Spring Hill (Prime) Lease by failing to refund the CAM overpayments to the Marottas.

191.    Admitted that Article 17.2(b) of the Spring Hill (Prime) Lease specifically provides that "Common Area Maintenance Expenses shall not include any Capital Expenditures[.]"

192.    Answering counterclaim defendants and third party defendant are without knowledge to know whether Spring Hill has, on numerous occasions, charged Capital Expenditures as CAM charges.

193.    Admitted that the Marottas have questioned these charges and asked Dunkin' and TDDR not to pay them.

194.    Admitted that DB Real Estate Assets paid the disputed amounts to maintain the lease. The remaining allegations are denied.

195.    Denied that Dunkin, TDDR and Spring Hill have failed to honor the terms of the Prime and Dunkin Leases in a commercially reasonable manner.

196.    Denied as a conclusion of law that Dunkin, TDDR and Spring Hill have breached the Leases.

197.    Denied as a conclusion of law that the Marottas have been damaged and continue to suffer damages as a direct and proximate result of Dunkin's and Spring Hill's actions.

WHEREFORE, the counterclaim should be dismissed.


COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT IV

(TDDR/Dunkin)
(Injunction restraining Dunkin/TDDR from renewing the lease with Spring Hill)

198.    The answering counterclaim and third party defendants reiterate their responses to the averments of fact contained in Paragraphs 1 through 197 of the Counterclaim/Third Party Complaint as though recited herein verbatim and at length.

199.    Denied as the information necessary to answer whether the Marottas have notified Spring Hill of the material misrepresentations existing in the Prime Lease that have been incorporated by reference into the Dunkin Lease is not within the knowledge of the answering counterclaim and third party defendants.

200.    Admitted that Spring Hill has refused to correct these alleged material misrepresentations.

201.    Denied that Spring Hill has refused to abide by the terms contained in Article 17.4 of its Lease with TDDR.

202.    Denied as it not within the answering parties' knowledge whether Spring Hill has charged numerous impermissible Capital Expenditures against the costs being assessed against the Marottas' pro-rata share of the CAM expense.

203.    Denied as it is a conclusion of law whether Spring Hill's refusal to correct the square footage misrepresentation, refund the CAM overpayments or correct the improper CAM assessments constitutes a substantial and material breach of the Lease.

204.    Denied as it is not within the answering parties' knowledge whether Spring Hill has been given opportunities to cure these misrepresentations but have refused to do so.

205.    Denied as a conclusion of law that Spring Hill has breached the Prime Lease.

206.    Denied as a conclusion of law whether Spring Hill disregarded the tenants' rights in the Prime Lease.

207.    Denied  that the space is comparable.

208. Denied that the Marottas have been able to locate several other commercial retail spaces that are comparable to the Spring Hill location, if not better as a Dunkin' location.

209. Denied that the commercial spaces that the Marottas have located are comparable.

210. Denied as a conclusion of law that the Marottas have been damaged and continue to suffer damages as a direct and proximate cause of the fraud being perpetrated upon them by Spring Hill.

211. Denied as a conclusion of law that the Marottas are entitled to an order restraining Dunkin/TDDR from renewing the current lease with Spring Hill without appropriate protections and without negotiating a fair market lease and amendments to the square footage discrepancies.

212. Denied that the Marottas are entitled to an Order compelling Dunkin/TDDR to negotiate a new lease for a new location in the Jenkintown area with a landlord at a fair market and commercially reasonable rent.

WHEREFORE, the counterclaim and third party complaint should be dismissed.

COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT V

(DUNKIN/TDDR)
(Breach of Franchise Agreement)

213. The answering parties reiterate their responses to the averments of fact set forth in paragraphs 1 through 212 of the Counterclaim/Third Party Complaint as though recited herein verbatim and at length.

214. Denied as stated. Certain Dunkin parties entered into a Franchise Agreement with Claudia I, LLC for significant consideration.

215. Denied as stated. In this Franchise Agreement, Dunkin authorized Claudia I, LLC to use and operate the Dunkin logos and brand and system.

216. Denied that the Marottas have honored the terms and spirit of the Franchise Agreement in the use and operation of the Dunkin brands and system.

217. Denied that Dunkin has failed to honor the Franchise Agreement.

218. Admitted that the Marottas have provided Dunkin with numerous elements of alleged proof to show that Spring Hill is allegedly acting improperly with respect to the CAM charges being assessed to them.

219. Denied that Dunkin has refused to consider this evidence. Admitted that Dunkin' has sought to terminate the Dunkin lease and the Franchise Agreement.

220.   Denied that Dunkin's negligent, reckless, intentional actions taken with wanton disregard for the Marottas' rights have damaged and continue to damage the Marottas.

WHEREFORE, the counterclaim and third party complaint should be dismissed.

### COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT VI
(DUNKIN/TDDR)
(Fraud-Inducement to Enter into Franchise Agreement)

221.   The answering parties reiterate their responses to the averments of fact set forth in paragraphs 1 through 220 of the Counterclaim/Third Party Complaint as though recited herein verbatim and at length.

222.   Denied as a matter of law that the Marottas were required to assume their Franchise Agreement.

223.   Admitted that the Marottas had frequent discussions with Dunkin representatives.

224.   Admitted that the Marottas were required to obtain Dunkin's approval prior to being able to purchase the prior franchisee's business.

225.   Admitted that the Marottas were also provided with a copy of the Franchise Disclosure Document which contained the following relevant statements:

   a.   "Buying a franchise is a complex investment.  The information in this disclosure document can help you make up your mind." (Cover Page, Franchise Disclosure Document)

   b.   "Dunkin Brands employees will provide services to you on behalf of DD under the terms of the Master Servicing Agreement between Dunkin' Brands and DD." (Item 2: Business Experience, p.  7, Franchise Disclosure Document)

226.   Admitted that the Franchise Agreement provides as follows:

   a.   "2.0 As a result of the expenditure of time, effort and money, we have acquired experience and skill in the continued development of the Dunkin' Donuts System (the "System"), which involves the conceptualization, design, specification, development, operation, marketing, franchising and licensing of stores and associated concepts for the sale of proprietary and non-proprietary food and beverage products." (Franchise Agreement, p.2)

   b.   "In connection with the System, we own or have the right to license certain intellectual property." (Franchise Agreement, p.2)

   c.   "2.2 As franchisor, we have the right to establish "Standards" for various aspects of the System that include the location, physical characteristics and operating

systems of stores and other concepts; the products that are sold; the qualifications of suppliers; the qualifications, organization and training of franchisees and their personnel; the marketing of products and our brand; and all other things affecting the experience of consumers who patronize our System." (Franchise Agreement, p.2)

227. Admitted that prior to the purchase of the Dunkin Donuts stores and entering into the Franchise Agreement with Dunkin, the Marottas had numerous meetings with various Dunkin representatives who were extremely helpful and responsive to their questions.

228. Admitted that the Operations Team were very responsive and worked hard to answer and resolve the Marottas issues.

229. Denied that the Operations team changed is not responsive.

230. Denied that Dunkin and TDDR take the position that the Marottas were not permitted to ask any questions but simply had to pay the bills and charges being assessed against them despite knowledge that these charges were incorrect.

231. Denied that Dunkin's Leasing Department refused to take any of the Marottas concerns into consideration when dealing with Spring Hill on the lease negotiation.

232. Denied that Dunkin's Operations Department and Accounts Payable Departments wouldn't respond to the Marottas' questions regarding the CAM charges even though Dunkin's own employees who were processing the payments thought that the charges appeared inappropriate.

233. Denied that the cooperativeness and free flow of information that the Marottas had experienced prior to closing had disappeared as this information is solely within the knowledge of an adverse party.

234. Denied as a matter of law that Dunkin made numerous written and oral representations to induce the Marottas to purchase these franchises, all of which remained unfulfilled after Dunkin had received its franchise fees.

235. Denied that Dunkin's actions with respect to Spring Hill indicate that it will not use its business experience and skills, items for which the Marottas have paid for by franchise fees, to permit the Marottas to succeed in this business.

236. Denied that Dunkin is forcing the Marottas to pay higher rent and CAM charges than are commercially reasonable when they alone have the power to change this situation.

237. Denied that the Marottas were lured into purchasing these franchises by Dunkin's pre-closing words and actions.

238. Denied that had the Marottas encountered the current treatment, they would never have entered into these franchise agreements or leases because this information is solely within the knowledge of an adverse party.

239. Denied that the Marottas have been damages and continue to suffer damages as a direct and proximate cause of Dunkin and TDDR's misrepresentations.

WHEREFORE, the counterclaim should be dismissed.

COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT VII

(Tortious Interference with the Franchise Agreement/Dunkin Lease)
(Spring Hill)

240. The answering parties reiterate their responses to the averments of fact set forth in paragraphs 1 through 239 of the Counterclaim/Third Party Complaint as though recited herein verbatim and at length.

241. Denied that Spring Hill has intentionally breached its Lease and obligations to the Marottas as this is a conclusion of law.

242. Denied that the Marottas have made overpayments.

243. Denied that Spring Hill has caused the Counterclaimant to breach its lease with Dunkin that has caused the termination of the Franchise Agreement as well.

244. Denied as a conclusion of law that but for Spring Hill's commercially unreasonable and improper action in violation of the terms of the lease, the Marottas would not have breached their lease with Dunkin and the Franchise Agreement would still be in effect.

245. Denied as a conclusion of law that Spring Hill has acted negligently, recklessly, intentionally and with wanton disregard for the Marottas' rights and has caused damage and continues to damage the Marottas as a direct and proximate result of their actions.

WHEREFORE, the counterclaim should be dismissed.

COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT VIII

(Tortious Interference with the Prospective Business Advantage)
(Dunkin/TDDR/Spring Hill)

246. The answering parties reiterate their responses to the averments of fact set forth in Paragraphs 1 through 245 of the Amended Counterclaim/Third Party Complaint as though recited herein verbatim and at length.

247. Denied that the Marottas to pay a higher than necessary rent for the Jenkintown location.

248. Denied that the rent currently being paid by the Marottas to Spring Hill far exceeds the price per square foot being charged as fair market rent in the region for comparable space.

249. Denied that the rent currently being paid by the Marottas to Spring Hill also far exceeds the price per square foot being charged by Spring Hill to other tenants and as being advertised to new tenants for comparable space.

250. Denied that Spring Hill is currently advertising the price of $18-22 per square foot as rent for vacant spaces in their shopping center as this information is not within the knowledge of answering defendants.

251. Denied that Spring Hill is currently promoting the Marottas' Dunkin Donuts store as the premier tenant and anchor store in the shopping center as this information is not within the knowledge of answering defendants.

252. Admitted that the Prime Lease is currently in the process of being re-negotiated.

253. Denied that Dunkin and TDDR have refused to negotiate a rent reduction to ensure that the new lease would reflect the correct square footage being occupied by the Marottas.

254. Denied as a conclusion of law that Dunkin and TDDR have refused to require Spring Hill to reimburse the Marottas for rent overpayments.

255. Denied that Dunkin and TDDR have refused to negotiate a fair market rent with Spring Hill in accordance with their own advertised prices.

256. Denied that the Marottas are being penalized by Dunkin and Spring Hill by being required to pay higher rent that other tenants and even new tenants for comparable space.

257. Denied that the Marottas are being penalized by Dunkin and Spring Hill by being required to pay CAM charges based on inflated square footage.

258. Denied as this is the characterization of a written document which speaks for itself.

259. Denied that Dunkin and TDDR's are depriving the Marottas of their ability to make a profit at this Store.

260. Denied that Dunkin and TDDR are taking the profits due to the Marottas and diverting them to Spring Hill.

261. Denied that there is no legitimate business justification for taking the profits due to the Marottas and diverting them to Spring Hill.

262. Denied that the lease is not at fair market rent.

263. Denied that Dunkin' can compel Spring Hill to correct the square footage currently being reflected in the Prime and Dunkin Leases.

264. Denied that there is no legitimate business justification for any of the actions that Dunkin, TDDR and Spring Hill have taken with respect to the Marottas.

265.   Denied that the Marottas have been damaged and continue to suffer damages as a direct and proximate result of the actions of Dunkin, TDDR and Spring Hill.

COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT IX
**(Injunctive Relief)**
(To Reinstate The Franchise Agreement pending resolution of this Matter)
(Dunkin/TDDR)

266.   The answering parties reiterate their responses to the averments of fact set forth in paragraphs 1 through 265 of the Counterclaim/Third Party Complaint as though recited herein verbatim and at length.

267.   Denied that the Prime lease has been terminated. Admitted that the Dunkin' sublease was terminated for nonpayment.

268.   Denied as a conclusion of law that both Spring Hill and Dunkin have improperly terminated the Lease and the Franchise Agreement.

269.   Denied as a conclusion of law that Spring Hill and Dunkin's own commercially unreasonable actions have tortiously interfered with the Marottas' ability to adhere to the terms of the Prime Lease, the Dunkin Lease and the Franchise Agreement.

270.   Denied as a conclusion of law that both Spring Hill and Dunkin have intentionally and recklessly refused to honor the terms of the Prime Lease, the Dunkin Lease and the Franchise Agreement to the Marottas' detriment.

271.   Denied that both Spring Hill and Dunkin have tortiously interfered with the Marottas' ability to reasonably honor the terms of the Spring Hill and Dunkin Lease and the Franchise Agreement.

272.   Denied that Spring Hill and Dunkin are benefiting.

273.   Denied that Dunkin will not be prejudiced by allowing the Marottas to continue to operate the Jenkintown Store as the rent and CAM are not being paid by the Marottas, who continue to free ride at Dunkin's expense.

274.   Denied that the Marottas will suffer a severe miscarriage of justice if they are not permitted to operate the Jenkintown Store during the pendency of this action.

   WHEREFORE, the counterclaim should be dismissed.

AFFIRMATIVE DEFENSES

275.   The complaint fails to state a claim upon which relief can be granted.

276.   The counterclaimants have unclean hands.

277.   Counterclaimants failed to join their predecessors in title who are  required parties.

278.   The counterclaims are barred by the statute of limitations.

279.   The equitable relief is barred by the doctrine of unclean hands.

280.   The equitable relief is barred by the doctrine of in pari delicto.

281.   The counterclaims are barred by the parol evidence rule.

282.   The counterclaims are barred by the statute of frauds.

283.   The counterclaims are barred by the doctrine of waiver.

284.   The counterclaims are barred by the doctrine of estoppel.

285.   The counterclaims are barred by the doctrine of release.

286.   The counterclaims are barred by the doctrine of laches.


WHEREFORE, the counterclaims and third party claims should be dismissed.


October 2, 2012

Craig R. Tractenberg/s

Craig R. Tractenberg, Id No. 34636
NIXON PEABODY LLP
Two Penn Center Plaza
1500 JFK Boulevard, Suite 200
Philadelphia, PA 19102

Attorneys for Plaintiffs and Third
Party Defendants.