IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS, LLC, DD IP HOLDER, LLC BASKIN-ROBBINS FRANCHISED RESTAURANTS, LLC and DB REAL ESTATE ASSETS I, LLC, | : : : : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | |
| CLAUDIA I, LLC, MANFRED P. MAROTTA and LYNNE K. MAROTTA, | : : : : | No. 12-2010 |
| Defendants. | : : | |
| v. | : : | |
| SPRING HILL REALTY, INC., Third Party Defendant. | : : : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                May 16, 2013

Plaintiff, Franchised Restaurants, LLC, DD IP Holder, LLC Baskin-Robbins Franchised Restaurants, LLC and DB Real Estate Assets I, LLC ("Dunkin' Donuts").[1] Dunkin' Donuts filed this action against a Defendant Franchisee seeking relief for breach of the franchise agreement. On January 22, 2013, Dunkin' Donuts file this motion for preliminary injunction. I heard oral argument on the motion on May 13, 2013. For the reasons set forth below, I will grant Plaintiff's Motion.

---

[1] Plaintiffs have filed a motion *in limine* to exclude evidence of pre-termination disputes which argues that the court must not consider Defendants arguments about the fraud, civil conspiracy, breach of contract, and tortious interference with contract claims. For the reasons set forth on the record in open court, I granted Defendants' motion. (Doc. No. 56).

1

**I.    Background**

The Complaint alleges causes of action against Defendants for breach of a franchise agreement and Sublease, as well as claims for trademark infringement, unfair competition, and enforcement of restrictive covenant.  Plaintiffs are the exclusive licensees of numerous federal registrations for the mark Dunkin' Donuts, Baskin-Robbins, or derivations thereof, as well as numerous other trademarks.[2]  On July 16, 2009, Defendant purchased an existing franchise in Jenkintown and took the predecessor's tenant interest and franchise agreement by assignment.  Defendants and Plaintiffs then entered into a franchise agreement and a transfer agreement.

The franchise agreement required remodeling and refurbishment by December 21, 2012.  Additionally, the terms of the agreement provided termination of the right to use the premises ends the franchise agreement: "Default occurs if franchisee breaches and obligation under another agreement necessary to the operation of the Store."  (Franchise Agreement at ¶ 14.0.1).  Finally, the franchise agreement provides there is "No cure 'if your lease for the Store is terminated…(or)… you have received three or more previous notices to cure.'"  (Id. at ¶14.2).[3]

---

[2] The United States Patent and Trademark Office the trademark DUNKIN' DONUTS at serial numbers 73215289, 76035918 and 73214414, as well as the trademark BASKIN 31 ROBBINS at registration numbers 3124983 and 3124982.

[3] The agreement also contained an integration clause stating:

> The Franchise Agreement (Ex. C) contains the following integration clause and disclaimer language:
> 16.6 This Agreement and the documents referred to herein shall be the entire, full and complete agreement between you and us concerning the subject matter of this Agreement, which supersedes all prior agreements….
>
> 16.7 Your success in this business is speculative and depends, to an important extent, upon your ability as an independent business owner. We do not represent or warrant that the Store will

The transfer agreement provided that Defendants acquired by assignment a tenant's interest in the sublease at the Jenkintown location.[4] The sublease contains a number of relevant paragraphs discussing details of the agreement. Paragraph 1.10 states that the term of the lease is 20 years from December 20, 2002. Paragraph 1.8 states that the payment of base rent is $9,583.33.[5] Paragraphs 6 and 7(a) state that tenant is responsible for failure to pay taxes and additional rent such as common area maintenance. Paragraph 18 states tenant shall be in default for failure to pay rent and 18(d) states that the tenant will have 10 day notice to cure and no notices required for more than one default within one year. Finally, paragraph 18(e) states that upon termination of the lease, the landlord is entitled to possession of the property.

II.     **Preliminary Injunction Hearing**

At the hearing, Dunkin Donuts argued that beginning November 15, 2011, Defendant withheld all Base Rent and common area expenses (CAM expenses) obligated under the sublease for 18 consecutive months while continuing to operate at the location.

---

achieve a certain level of sales or will be profitable, notwithstanding approval of the location. By your signature below, you acknowledge that you have entered into this Agreement after making an independent investigation of the Dunkin' Donuts and Baskin-Robbins Systems.

[4] The transfer agreement contains an integration clause stating:

The prospects for success of the business venture undertaken by BUYER by virtue of the Franchise Agreement is speculative and depends to a material extent upon BUYER's capability as a independent franchisee, as well as other factors. FRANCHISOR makes no representations or warranties as to the potential success of the business venture undertaken by BUYER hereby. BUYER represents that it has entered into this Agreement after making independent investigations of SELLER's business, and not in reliance upon any representation FRANCHISOR as to sales or profits which BUYER might be expected to realize. BUYER further represents and warrants that FRANCHISOR and its representatives, employees and agents have made no representations to induce BUYER to acquire this franchise and execute this Agreement which are not expressly set forth herein.

[5] Prior to December 2012, the Sublease provided for minimum rent of $8,750.00 per month. Beginning in January 2013, the Sublease provides for minimum rent of $9,583.33 per month.

Plaintiffs contend that the total amount owed for Base Rent, occupancy costs, with counsel fees, interest and costs is $304,768.97 for the period contained in the Account Receivable Status Report. Additionally, Defendants failed to remodel as provided by the franchise agreement and have failed to pay sales and payroll tax liabilities as of December 31, 2012.[6] Plaintiffs state that they sent multiple notices to cure the deficiencies, but Defendants have failed to do so. They contend that the brand image is being irreparably harmed by Defendants' actions.

Defendants argue that this case is merely about failure to pay rent and the permanent injunction will irreparably harm Defendants and will not benefit Plaintiffs. They contend that because Plaintiffs waited so long to request the injunction, there is no harm aside from money damages.[7] Defendants contend that aside from the rent, they have complied with all other requirements of the lease.

### III. Procedural History

On or about May 15, 2012, Defendants responded to the Complaint by filing a third party complaint against Spring Hill. The Third Party Complaint alleges causes of action against Spring Hill for fraud, civil conspiracy, breach of contract, tortious interference with contract and injunctive relief. The Third Party Defendants answered the third party complaint and denied all allegations. Defendants also asserted counterclaims against the Plaintiffs alleging bad faith and breach of the franchise

---

[6] The Commonwealth of Pennsylvania has recorded ten (10) tax liens against Claudia I, LLC for approximately $300,000 for unpaid sales and use tax to the Commonwealth of Pennsylvania, beginning in 2010 and continuing through 2012.

[7] Plaintiffs claim that its delay was the result of its unsuccessful attempts to mediate the dispute.

4

agreement. Third Party Defendant filed a motion to dismiss and Defendants amended their Complaint on July 6, 2012. Third Party Defendant filed a subsequent motion to dismiss on October 19, 2012 and Plaintiffs filed a motion for preliminary injunction on January 22, 2013.

## IV. Standard

In ruling on a motion for a preliminary injunction, the court must consider four factors: (1) the likelihood that the applicant will prevail on the merits at the final hearing; (2) the extent to which the applicant is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d. Cir. 2010); Opticians Ass'n v. Independent Opticians, 920 F. 2d 187, 191-92 (3d Cir. 1990). While a preliminary injunction can be appropriate in franchise termination cases where the franchisee is terminated for nonpayment or compliance with the franchise agreement, S & R Corp. v. Jiffy Lube International, Inc., 968 F.2d 371, 378 (3d Cir. 1992), it may only be granted where the plaintiff has demonstrated that there is a "significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." Adams v. Freedom Forge Corp, 204 F.3d 475, 484 (3d. Cir. 2000).

## V. Discussion

Despite Defendants' arguments, a franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor. The franchisor has the power to terminate the relationship where the terms of the franchise

5

agreement are violated, such as by non-payment of rent and taxes. When a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act. See S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 375 (3d Cir. N.J. 1992). I find that Plaintiffs have satisfied all four prongs of the above test, and I will grant the preliminary injunction.

Plaintiffs have demonstrated that their claim for infringement would likely succeed at trial. Under § 43(a) of the Lanham Act, the Plaintiff must show that Defendants' use of the valid trademark is "likely to create confusion concerning the origin of the goods or services," Opticians, 920 F.2d at 192. To prevail on an infringement claim under § 32, Plaintiffs must also show that Defendants use of the marks was unauthorized. See United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 137 (3d Cir. 1981). Here, Defendants are continuing to use the same mark following the termination of the franchise agreement, which constitutes unauthorized use. See 15 U.S.C.A. § 1114 (holding liable "Any person who shall, without the consent of the registrant-- (a) use in commerce any reproduction . . . of a registered mark . . . in connection with which such use is likely to cause confusion."). Additionally, there is a great likelihood of consumer confusion as to the relationship between Defendants and Plaintiffs. See Opticians, 920 F.2d at 195, citing Jaycees, 639 F.2d at 142.

In S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371 (3d Cir. 1992), the franchisee stopped paying rent and royalties on the Jiffy Lube stores, but continued to use the trademark. The franchisee stated that he was justified in halting payment because

Jiffy Lube breached some of its contractual obligations under the franchise agreement.[8] The franchisor, Jiffy Lube, terminated the agreement because the franchisee failed to pay royalties and then sought a preliminary injunction for the use of the trademark. On appeal, the Circuit stated that the first factor, likelihood that the applicant will prevail on the merits at final hearing, was the factor in issue.

The court found that the franchisee's failure to pay royalties and use the mark in an "innovative" way, warranted the injunction in favor of Jiffy Lube. The court held that by reference to contract and trademark principles, "[o]nce a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act." Jiffy Lube Int'l, Inc., 968 F.2d at 375. The court held that because the terminated franchisee and Jiffy Lube were using the same legally protectable trademark, owned by Jiffy Lube, and their concurrent use was highly likely to cause consumer confusion about the terminated franchisee's affiliation with the franchise, the court found that Jiffy Lube met its burden under section 43(a).[9] See Opticians, 920 F.2d at 195, citing Jaycees, 639 F.2d at 142.

Jiffy Lube Int'l, Inc., 968 F.2d 371 is very persuasive. Although the Defendants in the case at hand are paying royalties and are up to date on those payments, they have

---

[8] Specifically, the franchisee alleged that Jiffy Lube failed to maintain the quality of its other franchises in the Philadelphia area, causing the franchises to suffer. In response to Jiffy Lube's perceived inadequacies, the franchisee crafted his own rules about how the franchises should be run: he adopted a new training schedule and fleet billing policy, and erected a new non-conforming neon sign at his Egg Harbor center. S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374-375 (3d Cir. 1992).

[9] However, the court in Jiffy Lube went on to discuss that general contract principles allow a non-breaching party to either stop performance and assume the contract is avoided or continue its performance and sue for damages. "Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits." Id. at 376. This appears to be exactly what the Dunkin' Defendants are attempting to do.

7

breached the agreement by failing to pay rent and taxes, and refusing to remodel.[10] The Unlike, Jiffy Lube, Defendants in the case have not tried to innovate using the Plaintiffs' mark or general franchise rules, but that does not mean the consumers would not be confused as to the relationship between Plaintiffs and Defendants.[11]

Plaintiffs' arguments focus on the non-monetary damages they allege are being inflicted, such as loss of goodwill and reputation due to their failure to control what the Plaintiff is doing with the "Dunkin'" mark. Plaintiff contends that these immeasurable damages warrant the injunction. It is important to note that trademark infringement amounts to irreparable injury as a matter of law. See id., citing International Kennel Club, Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1092 (7th Cir. 1988) (damages "caused by trademark infringement are by their very nature irreparable"). Thus, prong two of the test is satisfied.

Plaintiffs must also show that its benefits from a preliminary injunction are not outweighed by irreparable injury to Defendants. Defendants argue that Plaintiff is directly responsible for their financial plight that has resulted in their rent arrearage and to grant an injunction now is to ensure the complete and final destruction of the Defendants' business without trial on the merits.[12] The court in Jiffy Lube reasoned that

---

[10] The court in Jiffy Lube, still granted the injunction despite the fact that the royalty fees were being paid in escrow. Id. at 378, n.8.

[11] Defendants state that they have complied with the requirements of the franchise agreement, sold only Dunkin' products, maintained the store's appearance, complied with operational inspections and audits, complied with Dunkin' promotions and preserved Dunkin's good will and brand loyalty at the Jenkintown location.

[12] In Burger King Corp. v. Hall, 770 F. Supp. 633 at 22,322-23 (S.D. Fla. 1991), the court stated that "as a matter of law, . . . a terminated franchisee's remedy for wrongful termination is an action for money damages, and not the continued unauthorized use of its franchisor's trademarks."

8

the loss of a franchise is indeed a harm; however, the franchisee, in that case, brought the injury upon himself by not paying royalties.  See Opticians, 920 F.2d at 197 (party "can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself.").  This is strikingly similar to the case at hand.  I agree that the loss of a franchise will detrimentally affect not only Defendants' financial status, but also the franchise itself.  However, not paying rent and taxes in breach of the franchise agreement and the transfer agreement was in Defendants' control.  Finally, the public interest is "most often a synonym for the right of the public not to be deceived or confused."  Id.  Thus, Plaintiff satisfies prong four of the test.

## VI.     Conclusion

For the above reasons, I will grant Plaintiffs' motion for a preliminary injunction.