# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

DUNKIN' DONUTS FRANCHISED
RESTAURANTS, LLC, DD IP HOLDER, LLC
BASKIN-ROBBINS FRANCHISED                          Civil Action No.  12-cv-2010
RESTAURANTS, LLC and DB REAL ESTATE
ASSETS I, LLC,
                            Plaintiffs,

v.

CLAUDIA I, LLC, MANFRED P.  MAROTTA
And LYNNE K.  MAROTTA,
                            Defendants.

---

CLAUDIA I, LLC, MANFRED P.  MAROTTA
And LYNNE K.  MAROTTA,
                            Marottas

v.

SPRING HILL REALTY, INC.
THIRD DUNKIN DONUTS REALTY, INC.
                     Third Party Defendants

---

### ANSWER, AFFIRMATIVE DEFENSES AND CROSS-CLAIMS OF
### THIRD PARTY DEFENDANT SPRING HILL REALTY, INC.

Third Party Defendant, Spring Hill Realty, Inc.  ("Spring Hill"), answers Third Party

Plaintiffs' Third Party Complaint as follows, with affirmative defenses and cross-claims:

1.      Denied.  To the extent that Third Party Plaintiffs allege factual allegations or legal

conclusions in response to the Complaint, these allegations and conclusions are denied.

2.      Denied as stated.  Claudia I, LLC is the sole franchisee under the Franchise

Agreement.  Mr. and Mrs. Marotta are guarantors.

3.      Denied as stated.  To the contrary, the Store, which is the subject to this litigation, is located at 505 Old York Road, Jenkintown, PA (the "Jenkintown Store") and is operated by Claudia I, LLC.

4.      Denied as stated.  Claudia I, LLC has operated this Store since July 2009, when it entered into a Franchise Agreement dated July 16, 2009.

5.      Admitted.  It is admitted that the Jenkintown Store is operated at a location where the prime landlord is Spring Hill Realty, Inc. ("Spring Hill"), and that Spring Hill maintains its principal place of business at 528 Main Street, Suite 200, Harleysville, Montgomery County, Pennsylvania.

6.      Admitted.  It is admitted that Third Dunkin' Donuts Realty, Inc. ("TDDR") entered into a lease with Spring Hill ("Prime Lease").  The current term of the Prime Lease has been extended through January 2014.  The remaining allegations are denied.

7.      Admitted in part and denied in part.  It is admitted that in Article 18 of the Prime Lease, TDDR designates a principal place of business at 14 Pacella Park Drive, Randolph, MA 02368.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the remaining allegation and the same is therefore denied.

8.      Denied.  The Dunkin Lease is in writing and speaks for itself.

9.      Admitted that none of the Third Party Plaintiffs are parties to the Prime Lease.

10.     Denied.  It is denied that any of the Third Party Plaintiffs are intended third party beneficiaries of the Prime Lease.  The allegations are further denied as conclusions of law.

11.     Denied.   It is denied that any of the Third Party Plaintiffs have been assigned TDDR's right and obligations under the Prime Lease.  The Dunkin Lease is in writing and speaks for itself.  The allegations are further denied as conclusions of law.

12.     Denied. It is denied that any of the Third Party Plaintiffs "stand in TDDR's shoes in the Prime Lease," by virtue of the assignment or otherwise.  The allegations are further denied as conclusions of law.

13.     Admitted.  It is admitted that Article 1.1(o) of the Prime Lease defines the Permitted Use as being the "operation of a quick service restaurant (for both on and off premises consumption) consisting of three (3) distinct trademarks for the manufacture and sale of products typically sold in Dunkin' Donuts, Baskin Robbins, and Togo's locations."

14.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

15.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

16.     Denied.  The Prime Lease is in writing and speaks for itself as to whether in Article 11 of the Prime Lease, Spring Hill has consented to the assignment and/or subletting of the Premises by TDDR to a franchisee.  The allegations are further denied as conclusions of law.

17.     Denied.  The Prime Lease is in writing and speaks for itself as to whether Spring Hill has provided a blanket approval for the assignment or subletting of the Prime Lease to the entities or individuals identified in paragraph 11.1 of the Prime Lease.  The allegations are further denied as conclusions of law.

18.     Denied.  The Prime Lease is in writing and speaks for itself as to whether Article 11 of the Prime Lease, paragraph 11.1, specifically provides TDDR the right to assign or sublet the Prime Lease to any of its subsidiaries or any of its "corporate qualified franchisee that has met the standards for franchise operation."  The allegations are further denied as conclusions of law.

19.     Denied.  The Prime Lease is in writing and speaks for itself, and the allegation is denied as a conclusion of law.

20.     Denied.  It is denied that Spring Hill is colluding with Dunkin' or committing fraud or conspiracy.  It is denied that any of the Third Party Plaintiffs are intended third party beneficiaries of the Prime Lease or have standing to seek damages against Spring Hill.  The remaining allegations are denied as conclusions of law.

21.     Denied.  It is denied that any of the Third Party Plaintiffs are intended third party beneficiaries of the Prime Lease or have privity to seek enforcement of the Prime Lease or to seek damages against Spring Hill.  The remaining allegations are denied as conclusions of law.

22.     Denied.  It is denied that any of the Third Party Plaintiffs are intended third party beneficiaries of the Prime Lease or have standing to seek enforcement of the Prime Lease.   The Prime Lease is in writing and speaks for itself.  The remaining allegations are denied as conclusions of law.

23.     Admitted in part and denied in part.  It is admitted that Third Party Plaintiffs have attempted to compel Spring Hill to act in accordance with Third Party Plaintiffs' interpretation of Article 17.4 of the Prime Lease.  It is denied that Spring Hill is not in compliance with Article 17.4 of the Prime Lease, or that any of the Third Party Plaintiffs has standing to compel action by Spring Hill.  The Prime Lease is in writing and speaks for itself.  The remaining allegations are denied as conclusions of law.

24.     Denied.  It is denied that Spring Hill has refused and continues to refuse to comply with Article 17.4 of the Prime Lease.  The Prime Lease is in writing and speaks for itself. The remaining allegations are denied as conclusions of law.

25.     Denied.  The leases are in writing and speak for themselves as to whether the square footage representations contained in Paragraph 1.1(p) of the Prime Lease are specifically incorporated into the Dunkin Lease at Paragraph 1.6.

26.     Denied.  It is denied that a misrepresentation exists regarding the actual square footage occupied by the Marottas.  The remaining allegations are denied as conclusions of law to which no response is required.

27.     Admitted in part and denied in part.  It is admitted in the abstract that the amount of square footage being leased by the Plaintiff and Marottas has a direct impact on the amount of Common Area Maintenance ("CAM") that the Marottas are required to pay but denied in the actual charges to the Marottas.

28.     Denied.  It is denied that Spring Hill misrepresented the amount of square footage actually occupied by the Marottas or that any such misrepresentation caused the Marottas at any time to be required to pay a larger share of the CAM charge than would be required if the square footage were properly stated.

## The Prime Lease

29.     Denied.  The Prime Lease, Article 1.1(d) is in writing and speaks for itself as to whether the common areas are "parking areas, access roads, sidewalks, and landscaping in the shopping Center intended for the non-exclusive, general use of tenants, other occupants of the Shopping Center and the general public."

30.     Denied.  The Prime Lease, Article 1.1(h), is in writing and speaks for itself as to whether it defines the Landlord's floor area as the "aggregate amount of square feet of leasable floor area in the Shopping Center, and is currently 29,384 square feet."

31.     Denied.  The Prime Lease is in writing and speaks for itself as to whether Article 7.2(a) of the Prime Lease provides that the tenant shall reimburse the landlord for its pro-rata share of "real property taxes assessed on the tax parcel on which the Premises are located."

32.     Denied.  Article 7.2(b) of the Prime Lease is in writing and speaks for itself as to whether the tenant's pro-rata share shall be based upon the amount of square footage of the Premises.

33.     Denied.  Article 1.1(p) of the Prime Lease is in writing and speaks for itself as to whether the Premises is "that portion of the Landlord's building designated "Premises" on the site plan attached to Exhibit A, in the configuration shown on the Site Plan, and with square footage as follows:

Ground Floor:          3,100 square feet

Basement:              1,500 square feet

Second Floor:          484 square feet"

34.     Denied as stated.  It is admitted that according to the Prime Lease, TDDR occupies 5084 square feet.  The Marottas occupied the Premises pursuant to the terms of the Dunkin' Lease.

35.     Denied.  Article 17.1 of the Prime Lease is in writing and speaks for itself as to whether the Landlord shall be responsible for maintenance of common areas.

36.     Denied.  The Prime Lease is in writing and speaks for itself as to whether in defining the tenant's pro-rata share of the CAM charges, Article 17.2(a) of the Prime Lease provides that "the tenant shall reimburse Landlord for Tenant's pro-rata share of the costs and expenses necessary for the maintenance and operation of the Common Area of the Shopping Center[.]"

37.     Denied.  The Prime Lease is in writing and speaks for itself as to whether in Article 17.2(b) provides that CAM expenses shall not include any capital expenditures as defined by the IRS code.

38.     Denied.  The Prime Lease is in writing and speaks for itself as to whether tenant's pro-rata share of the CAM expense is calculated based upon the square footage actually possessed by the tenant.

39.     Denied.  The Prime Lease is in writing and speaks for itself as to whether Article 17.4 provides that a tenant may conduct a square footage audit at its own cost.

40.     Denied.  The Prime Lease speaks for itself whether Article 17.4 provides that where "the Common Area Maintenance Expenses are found to be overstated by 5% or more, and as a result Tenant has over paid for Tenant's pro rata share of such expenses by more than fifteen hundred Dollars ($1500), Landlord shall bear the cost of such inspection, excluding the cost of travel and lodging.  Landlord shall promptly refund to Tenant any overpayment[.]"

41.     Denied.  It is denied that the Marottas made overpayments of CAM, or that any CAM overpayments made by the Marottas far exceed the sum of $1500.

42.     Denied.  It is denied that Spring Hill has been charging Capital Expenditures as CAM expenses.  The remaining allegations are denied as conclusions of law to which no response is required.

43.     Denied.  It is denied that Spring Hill has charged improper CAM expenses to its tenant under the Prime Lease.  The remaining allegations are denied as conclusions of law to which no response is required.

44.     Denied.  It is denied that Spring Hill has charged improper business operation taxes to its tenant under the Prime Lease.  The remaining allegations are denied as conclusions of law to which no response is required.

45.     Admitted.  It is admitted that the Marottas have issued demands for reimbursement on several occasions to no avail.

46.     Denied.  It is denied that Spring Hill has refused to provide any details or documentation regarding the expenditures being charged as CAM.

## The Dunkin Lease

47.     Denied.  The Dunkin/TDDR sublease assumed by the Marottas ("Dunkin Lease") is in writing and speaks for itself.

48.     Denied.  The Dunkin Lease is in writing and speaks for itself.

49.     Denied.  The Dunkin Lease is in writing and speaks for itself.  By way of further answer, it is denied that the Dunkin Lease references and incorporates all of the terms of the Prime Lease.

50.     Denied.  It is denied that the Marottas have any claims against Spring Hill under the Dunkin Lease.  The Dunkin Lease is in writing and speaks for itself.  Paragraphs 10, 11, 21 and 22 of this Answer are incorporated by reference. The remaining allegations are denied as conclusions of law to which no response is required.

51.     Denied.  Spring Hill is unable to respond to the allegation as it is unclear to what the term "these issues" relates.  By way of further answer, it is denied that the Marottas have any claims against Spring Hill under the Dunkin Lease.  The Dunkin Lease is in writing and speaks for itself.  Paragraphs 10, 11, 21 and 22 of this Answer are incorporated by reference. The remaining allegations are denied as conclusions of law.

52.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

53.     Denied.  It is denied that a "square footage discrepancy" exists or that Spring Hill failed to take any action required of it.  The remaining allegations are denied as conclusions of law.

54.     Denied.  It is denied that Spring Hill "states that TDDR is the only party entitled to seek enforcement of the terms of the Prime Lease."  The remaining allegations are denied as conclusions of law.

55.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied. The remaining allegations are denied as conclusions of law.

56.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

57.     Denied.  The Dunkin Lease is in writing and speaks for itself.

**Square Footage Audit**

58.     Denied.  It is denied that the Marottas "realized" in late 2010 that "there might be some issue regarding the square footage calculations represented in the Prime Lease and the Dunkin Lease."  To the contrary, the Marottas have admitted that they "suspected" an overstatement of square footage prior to purchasing the Jenkintown store.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the remaining allegations, and the same are therefore denied.

59.     Denied.  It is denied that Third Party Defendants ordered and received a completed square footage audit in February 2011 that confirmed that the actual square footage of

the lease premises was overstated and the actual square footage of the shopping center square footage was understated.

60.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

61.     Denied.  It is denied that an audit by the Third Party Defendants revealed that the Landlords (both Dunkin and Spring Hill) had understated the total square footage of the shopping center.

62.     Denied.  Spring Hill is unable to respond to the allegation that the total square footage of the shopping center is stated to be 29,384 in the Prime Lease but the rent roll prepared by Spring Hill Realty shows a total square footage of 30,094.  The Marottas fail to specify the date of the rent roll.

63.     Denied.  It is denied that the audit also revealed that the Landlords (both Dunkin and Spring Hill) had *overstated* the square footage actually occupied by the Marottas.

64.     Denied.  Spring Hill is unable to respond to the allegation as it unclear to which lease the allegation refers.  By way of further answer, the Prime Lease and Dunkin Lease are in writing and speak for themselves as to whether the Marottas are occupying 3167 square feet on the first floor.

65.     Denied.   After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

66.     Denied.  It is denied that the difference in square footage is 384.4 square feet, which represents more than a 10% difference.

67.     Admitted.  It is admitted that Spring Hill and Dunkin maintain that the square footage is to be calculated from the outside walls of the leased premises.

68.     Denied.  The Prime Lease is in writing and speaks for itself as to whether Article 1.1(h) of the Prime Lease defines the "Landlord's Floor Area" as being the "aggregate amount of square feet of leasable floor area in the Shopping Center."  It is denied that the "usual and customary definition" for "Landlord's Floor Area" requires the calculation of square footage from the internal walls for calculation of common area maintenance.  The remaining allegations are denied as conclusions of law.

69.     Denied.  It is denied that Spring Hill has misrepresented facts regarding square footage to the Marottas.  It is denied that the Marottas have been charged a larger pro-rata share of the CAM expense that they should be required to pay due to misrepresentations regarding the square footage of the leasable floor area.  The remaining allegations are denied as conclusions of law.

70.     Denied.  It is denied that the Marottas have been paying a larger share of CAM without refund since July 2009.  The remaining allegations are denied as conclusions of law.

71.     Denied.  It is denied that the Marottas have also been forced to pay a pro-rata share of several improper CAM expenditures.  The remaining allegations are denied as conclusions of law.

72.     Denied.  It is denied that the Marottas have also been forced to pay for various business operation taxes charged to Spring Hill that are not properly chargeable to the tenants under either the Prime Lease or Dunkin Lease.  The remaining allegations are denied as conclusions of law.

73.     Admitted in part and denied in part.  It is denied that the items identified represent CAM expenses that should not have been properly charged under the Prime Lease.  It is admitted that the Marottas' auditor inaccurately raised several other issues relating to CAM expenses

which the auditor believes should not have been properly charged to the tenants as a CAM expense, such as:

     a.    Tenants are improperly being charged for trash/dumpster removal;

     b.    Repairs to glass/new fire door should have been a landlord expense;

     c.    Tenants are only responsible for real estate taxes and should not have been charged a business privilege tax.

The remaining allegations are denied as conclusions of law.

74.    Admitted in part and denied in part.  It is denied that Spring Hill failed to provide appropriate documentary back up for charges being assessed under the Prime Lease.  It is admitted that in a letter dated August 22, 2011, the auditor inaccurately identified several other areas where Spring Hill allegedly had failed to provide appropriate documentary back up for charges being assessed against the Tenants.  The remaining allegations are denied as conclusions of law.

75.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

76.    Denied.  It is denied that Spring Hill refused to deal with any of the issues and has refused to correct the square footage overstatement.  By way of further answer, it is denied that there is a square footage overstatement.

77.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

78.    Admitted.  It is admitted that TDDR, Dunkin and Spring Hill have not refunded any amounts to the Marottas for overpayments made on CAM.

79.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

80.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

81.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

82.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied. It is further denied that the Marottas have provided information regarding comparable commercial premises, or that Spring Hill was offering comparable space within the same shopping center for the cited price per square foot.

83.     Denied.  It is denied that the Prime Lease requires that Dunkin and the Marottas pay $36 per square foot for an overstated CAM percentage.

84.     Denied.  It is denied that $36 per square foot for this location and type of commercial space far exceeds the fair market price.  It is denied that the Marottas have or can make such a demonstration.

85.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations as to what the Marottas online/internet research revealed, and the same are therefore denied.  By way of further answer, it is denied that if Spring Hill in fact did offer space in this same shopping center for $18 to $22 per square foot, such space would be comparable to the lease space at here at issue.

86.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

87.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

88.     Denied.  It is denied that Dunkin refused to re-negotiate a lower price for the rent or raise any of these issues with Spring Hill.

89.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

90.     Denied.  It is denied that the square footage is inaccurately reflected in the Prime Lease.   The remaining allegations are denied as conclusions of law.

91.     Denied.  It is denied that Dunkin/TDDR have no legitimate business justification for refusing to negotiate a new lease at fair market rent as is currently being advertised by Spring Hill.

92.     Denied.  It is denied that Dunkin/TDDR have no legitimate business justification for refusing to negotiate a new lease with a new landlord for a new location when such locations exist and the Marottas have agreed to incur the cost of the fit out of such new location.

93.     Admitted in part and denied in part.  It is admitted the Marottas have provided copies of an audit making certain allegations regarding CAM charges and assessment under the Prime Lease.  It is denied that the allegations made in the audit are accurate.

94.     Denied.  It is denied that the square footage measurements being used by Spring Hill to calculate pre rata CAM charges are incorrect.  It is denied that the Marottas are due any reimbursement from Spring Hill, or that Spring Hill has refused to re-calculate CAM expenses. The remaining allegations are denied as conclusions of law.

95.     Denied.  It is denied that Dunkin/TDDR have refused to take any steps to re-negotiate the lease to make sure that the CAM percentage is corrected, to ensure that the square footage is accurately reflected, or to make sure that they are getting a fair market value for rent.

96.     Denied.  It is denied that Dunkin/TDDR appear to have aligned themselves with the Prime Landlord, Spring Hill, rather than its own franchisee.

97.     Denied.  It is denied that Dunkin/TDDR have no business justification for aligning themselves with the Prime Landlord against the Marottas.  The remaining allegations are denied as conclusions of law.

98.     Denied.  It is denied that Spring Hill is "stealing" from the Marottas.  The remaining allegations are denied as conclusions of law.

99.     Denied.  It is denied that Spring Hill is "stealing" from the Marottas.  The remaining allegations are denied as conclusions of law.

100.     Denied.  It is denied that Dunkin/TDDR have colluded with Spring Hill to harm the Marottas in refusing to compel Spring Hill to correctly state the square footage, re-fund excess CAM already paid by the Marottas as expressly required by the terms of the Lease, and by refusing to ensure that the Marottas are provided with a Lease which accurately reflects the fair market value rental for this location. The remaining allegations are denied as conclusions of law.

101.     Denied.  It is denied that Dunkin/TDDR are colluding with Spring Hill against the Marottas. The remaining allegations are denied as conclusions of law.

102.     Denied.  It is denied that the Marottas have been harmed and continue to suffer harm as a direct and proximate result of Dunkin/TDDR's and Spring Hill's actions and collusion. The remaining allegations are denied as conclusions of law.

## COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT I
### (DUNKIN, TDDR and SPRING HILL)
### (Fraud)

103.    Spring Hill reiterates its previous answers to paragraphs 1 through 102 of the Third Party Complaint as though recited herein verbatim and at length.

104.    Admitted.  It is admitted that Spring Hill Realty, Inc. is named as a Third Party Defendant and maintains its principal place of business at 528 Main Street, Suite 200, Harleysville, Montgomery County, in the Commonwealth of Pennsylvania.

105.    Denied.  It is denied that Leo Orloski is a named party.

106.    Denied.  It is denied that Brian Husberger is a named party.

107.    Admitted in part and denied in part.  It is admitted that Spring Hill leased a portion of its shopping center located at 505 Old York Road, Jenkintown, PA to TDDR pursuant to the Prime Lease.  The Prime Lease is in writing and speaks for itself.  It is denied that TDDR leased the Premises to the Marottas. The remaining allegations are denied as conclusions of law.

108.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

109.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

110.    Admitted.  It is admitted that Jennie Wilson was the vice treasurer of TDDR who signed the Prime Lease as vice president of TDDR in February 2002.

111.    Denied.  It is denied that the Prime Lease and the Dunkin Lease clearly misrepresent the actual square footage being occupied by the Marottas.

112.     Denied.  It is denied that the Marottas have obtained an independent audit that clearly demonstrates that the total square footage of the shopping center as represented in the lease is incorrect by Spring Hill's own calculations.

113.     Denied.  It is denied that the Marottas have obtained an independent audit that clearly demonstrates that the actual square footage being leased by the Marottas as represented in the Lease is being overstated.

114.     Denied.  It is denied that the Marottas' audit clearly shows that the Marottas are being overcharged on the pro rata share of the CAM expenses being assessed against them.

115.     Denied.  It is denied that the Marottas' audit also clearly shows that Spring Hill is improperly charging certain landlord expenses as CAM charges.

116.     Denied.  It is denied that Spring Hill and Dunkin and TDDR have been provided with clear and convincing evidence that they are being overcharged for CAM and being charged improperly on certain expenses.  It is denied that Spring Hill and Dunkin have refused to correct the square footage or expense issues.

117.     Denied.  It is denied that both Dunkin and Spring Hill have refused to make any corrections whatsoever.

118.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

119.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

120.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

121.    Admitted.  It is admitted that Dunkin and TDDR have refused to hold Spring Hill accountable for improper CAM charges being assessed against the Marottas and have required the Marottas to pay these without question.  By way of further answer, the Marrottas refuse to pay the CAM charges.

122.    Denied.  It is denied that Spring Hill has refused to correct known errors, or that Dunkin failed to raise these issues with the Prime Landlord during the lease negotiations.

123.    Denied.  It is denied that Dunkin refused to re-negotiate the lease with Spring Hill to ensure that their sub-tenant, the Marottas, will be charged fair market value on the rent.

124.    Admitted in part and denied in part.  It is admitted that the Marottas have provided numerous other alternative leasing, including but not limited to providing listings for other, commercial spaces for Dunkin/TDDR to lease.  It is denied that these alternatives are comparable.

125.    Denied.  It is denied that the other commercial locations indicated by the Marottas are comparable, if not better suited for a franchise location, and are at fair market rents.

126.    Denied.  It is denied that Dunkin refused these options claiming that they are not comparable without doing any further investigation or providing any details as to why these spaces are unacceptable.

127.    Denied.  It is denied that the Marottas have been damaged and continue to suffer damages as a direct and proximate result of the intentional misrepresentations contained in the Leases and Spring Hills and Dunkin's and TDDR's intentional refusal to correct the misrepresentations contained in the Leases.

128.    Denied.  It is denied that Dunkin, TDDR and Spring Hill are working together to permit the CAM and rent overcharges to continue and go unquestioned and to steal from the Marottas.

WHEREFORE, the Third Party Complaint should be dismissed.

### <u>COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT II</u>
### <u>(DUNKIN, TDDR and SPRING HILL)</u>
### <u>(Civil Conspiracy)</u>

129.    Spring Hill reiterates its previous answers to paragraphs 1 through 128 of the Third Party Complaint as though recited herein verbatim and at length.

130.    Admitted in part and denied in part.  It is admitted that Spring Hill owns the Premises being leased to Dunkin pursuant to the Prime Lease, and that the Marottas are sub-letting the property from Dunkin' pursuant to the Dunkin Lease.  It is denied that Premises are being leased to the Marottas pursuant to the Prime Lease. The remaining allegations are denied as conclusions of law.

131.    Admitted.

132.    Admitted.

133.    Denied.  It is denied that Spring Hill has intentionally and purposely overstated the pro rata share of the Marottas' CAM responsibility.

134.    Denied.  It is denied that Spring Hill has been notified of the square footage discrepancy and has refused to correct the error in the Prime Lease.

135.    Denied.  It is denied that Dunkin and TDDR have refused to raise the issue with Spring Hill or correct the issue in the Dunkin Lease.

136.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

137.     Denied.  It is denied that Spring Hill refused to deal with the Marottas on the square footage issue claiming that the Marottas have no standing to challenge any terms in the Prime/Prime Lease.  By way of further answer, Spring Hill has informed the Marottas that the square footage measurements set forth in the Prime Lease are correct.

138.     Denied.  It is denied that any shell game is occurring.  It is denied that there is any fraudulent misrepresentation in the Prime Lease.  It is denied that Spring Hill is "stealing" from the Marottas.

139.     Denied.  It is denied that the Prime Lease is currently in the process of being re-negotiated, or that it is to be renewed in January 2013.  To the contrary, the Prime Lease has been extended through January 2014.

140.     Admitted.  It is admitted that the Marottas asked Dunkin and TDDR to raise the CAM and square footage issues with Spring Hill during the re-negotiation process.

141.     Admitted.  It is admitted that the Marottas have asked Dunkin and TDDR to consider other commercially suitable locations and Dunkin' and TDDR have refused.

142.     Denied.  It is denied  that the Marottas have asked Dunkin and TDDR to negotiate a fair market rent for the Premises, or that Dunkin' refused to negotiate a fair market rent for the Premises.

143.     Denied.  It is denied that Spring Hill, TDDR and Dunkin have been provided with an audit that shows that the Landlord's square footage calculations are incorrect.

144.     Denied.  It is denied that Spring Hill, TDDR and Dunkin have intentionally refused to act in a commercially reasonable and customary way even though they have been provided with evidence demonstrating that their square footage calculations are incorrect.

145.    Denied.  It is denied that Spring Hill, TDDR and Dunkin have acted in concert to perpetrate a fraud upon the Marottas.

146.    Denied.  It is denied that together, Dunkin, TDDR and Spring Hill have colluded together to enter into an unfavorable lease that negatively impacts the Marottas, or that they have have refused to abide by the terms of the Prime Lease.

147.    Denied.  It is denied that rather than protecting its franchisee, Dunkin has intentionally and purposefully taken steps to guard and protect the Landlord, Spring Hill, by requiring the Marottas to sign a lease amendment which provides a full release and waiver of claims to Spring Hill even though Spring Hill is not a party to the "sublease."

148.    Denied.  It is denied that together, Dunkin, TDDR and Spring Hill have ensured that the Marottas are effectively deprived of any ability to question the square footage or the amount or nature of the CAM charges.

149.    Denied.  It is denied that together, Dunkin, TDDR and Spring Hill have fraudulently misrepresented the total square footage being occupied by the Marottas resulting in the Marottas being held liable for a higher pro rata share of the CAM expense.

150.    Denied.  It is denied that together, Dunkin, TDDR and Spring Hill have refused to correct these misrepresentations either through a lease amendment or through the formation of a new lease that would fairly and accurately reflect the proper square footage.

151.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

152.    Denied.  It is denied as a conclusion of law that the Marottas have been harmed and continue to suffer damages as a direct and proximate result of the concerted actions of Spring Hill, TDDR and Dunkin.

WHEREFORE, the Third Party Complaint should be dismissed.

## COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT III
### (DUNKIN, TDDR and SPRING HILL)
### (Breach of Contract)

153.    Spring Hill reiterates its previous answers to paragraphs 1 through 152 of the

Third Party Complaint as though recited herein verbatim and at length.

154.    Denied.  After reasonable investigation, Spring Hill is without sufficient

information to form a belief as to the truth of the allegations, and the same are therefore denied.

155.    Denied.  After reasonable investigation, Spring Hill is without sufficient

information to form a belief as to the truth of the allegations, and the same are therefore denied.

156.    Admitted.  It is admitted that the initial term of the Prime Lease is for a term of 10

years, starting in February 2002 and terminating in January 2013.  By way of further answer, it

has been extended through January 2014.

157.    Admitted.  It is admitted that the "sublease" with TDDR, as assigned to DB Real

Estate Assets I, LLC, is for a term of 20 years, starting in December 2002 and terminating in

December 2022.

158.    Denied.  After reasonable investigation, Spring Hill is without sufficient

information to form a belief as to the truth of the allegations, and the same are therefore denied.

159.    Denied.  It is denied that under the Prime Lease TDDR assigned all of its rights

and responsibilities under the Prime Lease to the Marottas.  The Prime Lease is in writing and

speaks for itself.  The remaining allegations are denied as conclusions of law.

160.    Denied.  It is denied that in the Dunkin Lease, TDDR assigned the entire term of

the Prime Lease to the Marottas. The Dunkin Lease is in writing and speaks for itself.  The

remaining allegations are denied as conclusions of law.

161.    Denied.  It is denied that the Marottas are TDDR's "assignee," or that any Third Party Plaintiff stands in TDDR's shoes with respect to Spring Hill in the Prime Lease. The Prime Lease is in writing and speaks for itself.  The remaining allegations are denied as conclusions of law.

162.    Denied.  It is denied that the Marottas are TDDR's "assignee," or that any Third Party Plaintiff has standing to enforce the terms and conditions of the Prime Lease. The Prime Lease is in writing and speaks for itself.  The remaining allegations are denied as conclusions of law.

163.    Denied.  It is denied that Spring Hill has committed fraud, misrepresentations, refused to comply with Article 17.4 or otherwise materially breached the Prime Lease, particular with respect to the Marottas.  The Prime Lease is in writing and speaks for itself.  The remaining allegations are denied as conclusions of law.

164.    Denied.  Spring Hill's answer to paragraph 163 is incorporated herein.  By way of further answer, it is denied that Spring Hill caused and Third Party Plaintiff to materially breach its contractual obligations under the Dunkin Lease.  The Prime Lease is in writing and speaks for itself.  The remaining allegations are denied as conclusions of law.

165.    Denied.  The Dunkin Lease is in writing and speaks for itself.

166.    Denied.  The Dunkin Lease is in writing and speaks for itself.

167.    Denied.  The Dunkin Lease is in writing and speaks for itself.

168.    Denied.  The Dunkin Lease is in writing and speaks for itself.

169.    Denied.  The Dunkin Lease is in writing and speaks for itself.

170.    Denied.  The Dunkin Lease is in writing and speaks for itself.

171.    Denied.  The Dunkin Lease is in writing and speaks for itself.

172.     Denied.  The Dunkin Lease is in writing and speaks for itself.

173.     Admitted.  It is admitted that the October 30, 2002 Amendment to the Prime Lease, at paragraph 2(b) amends section 1(p) of the lease relating to the leased premises to change the square footage being leased from 3,152 to 3,167.

174.     Admitted that the October 30, 2002 Amendment was signed by Jayne Fitzpatrick, VP Finance for TDDR and Leo Orloski, president of Spring Hill Realty, Inc.

175.     Denied.  It is denied that the Dunkin Lease operates as an assignment of all of TDDR and Dunkin's rights and responsibilities under the Spring Hill (Prime Lease) to the Marottas.  The Dunkin Lease is in writing and speaks for itself.  The remaining allegations are denied as conclusions of law.

176.     Denied.  It is denied that the Dunkin Lease operates as an assignment of all of TDDR and Dunkin's rights and responsibilities under the Spring Hill (Prime Lease) to the Marottas, or that the Marottas have standing to name Spring Hill as a party to this action.  The Prime Lease and Dunkin Lease are in writing and speak for themselves.  The remaining allegations are denied as conclusions of law.

177.     Denied.  It is denied that the Dunkin Lease operates as an assignment of all of TDDR and Dunkin's rights and responsibilities under the Spring Hill (Prime Lease) to the Marottas, or that the Marottas have standing to seek enforcement of Article 17.4 contained in the Prime Lease.  The Prime Lease and the Dunkin Lease are in writing and speak for themselves. The remaining allegations are denied as conclusions of law.

178.     Denied.  It is denied that Spring Hill has been put on actual notice that the square footage contained in its Lease with Dunkin misrepresents the space actually being occupied by

the Third Party Plaintiff.  To the contrary, the Prime Lease correctly states the square footage of the space actually being occupied by the Third Party Plaintiff.

179.    Denied.  It is denied that both the Prime Lease and Dunkin Lease require that upon presentation of proof that the square footage contained in the lease is incorrect resulting in a CAM overpayment of more than 5%, the overpayments made by the Marottas will be refunded. The Prime Lease and the Dunkin Lease are in writing and speak for themselves.  The remaining allegations are denied as conclusions of law.

180.    Denied.  It is denied that both Dunkin and Spring Hill have been provided with conclusive proof that the Marottas have been overcharged for their CAM obligations by more than 5%.

181.    Denied.  It is denied that both Dunkin and Spring Hill have also been provided with conclusive proof that the Marottas have been charged for CAM expenses that are not appropriate.

182.    Denied.  It is denied that both Dunkin and Spring Hill have refused to honor the terms of the Lease or to even discuss these discrepancies with the Marottas. The remaining allegations are denied as conclusions of law.

183.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

184.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

185.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

186.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

187.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

188.     Denied.  It is denied that Spring Hill has violated the Dunkin and Prime Lease by charging amounts to the Marottas that are not properly chargeable as CAM and by refusing to refund alleged overpayments of CAM made by the Marottas. The remaining allegations are denied as conclusions of law.

189.     Denied.  It is denied as a conclusion of law that Dunkin has violated the Dunkin Lease by charging improper CAM amounts to the Marottas even though the Marottas have repeatedly questioned the payment of these and the validity of the CAM charges and expenses.

190.     Denied.  It is denied that Spring Hill has violated Article 17.4 of the Spring Hill (Prime) Lease by failing to refund the CAM overpayments to the Marottas.  The remaining allegations are denied as conclusions of law.

191.     Denied.  The Prime Lease is in writing and speaks for itself.

192.     Denied.  It is denied that Spring Hill has, on numerous occasions, charged Capital Expenditures as CAM charges.  The remaining allegations are denied as conclusions of law.

193.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

194.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

195.     Denied.  It is denied that Spring Hill has failed to honor the terms of the Prime Lease in a commercially reasonable manner. Spring Hill is not a party to the Dunkin Lease,

which is in writing and speaks for itself.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the remaining allegations, and the same are therefore denied.  The remaining allegations are further denied as conclusions of law.

196.    Denied.  It is denied as a conclusion of law that Dunkin, TDDR and Spring Hill have breached the Leases.

197.    Denied.  It is denied as a conclusion of law that the Marottas have been damaged and continue to suffer damages as a direct and proximate result of Dunkin's and Spring Hill's actions.

WHEREFORE, the Third Party Complaint should be dismissed.

## COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT IV
### (TDDR/Dunkin)
### (Injunction restraining Dunkin/TDDR from renewing the lease with Spring Hill)

198.    Spring Hill reiterates its previous answers to paragraphs 1 through 197 of the Third Party Complaint as though recited herein verbatim and at length.

199.    Denied.  It is denied that the Marottas have notified Spring Hill of any material misrepresentations existing in the Prime Lease.  The Prime Lease and the Dunkin Lease are in writing and speak for themselves.  The remaining allegations are denied as conclusions of law.

200.    Denied.  It is denied that Spring Hill has refused to correct any material misrepresentations existing in the Prime Lease.  The remaining allegations are denied as conclusions of law

201.    Denied.  It is denied that Spring Hill has refused to abide by the terms contained in Article 17.4 of Prime Lease.  The Prime Lease is in writing and speaks for itself.  The remaining allegations are denied as conclusions of law.

202.     Denied.  It is denied that Spring Hill has charged numerous impermissible Capital Expenditures against the costs being assessed against the Marottas' pro-rata share of the CAM expense.

203.     Denied.  It is denied that Spring Hill has refused to correct any square footage misrepresentations, refund CAM overpayments or correct improper CAM assessments.  It is further denied that Spring Hill's has substantially or materially breached the terms of the Prime Lease.  The Prime Lease is in writing and speaks for itself.  The remaining allegations are denied as conclusions of law.

204.     Denied.  It is denied that Spring Hill has been given opportunities to cure any misrepresentations or failed to do so. The remaining allegations are denied as conclusions of law.

205.     Denied as a conclusion of law that Spring Hill has breached the Prime Lease.

206.     Denied.  It is denied that Spring Hill is determined to act with reckless disregard for any Third Party Plaintiff's rights or for the stated provisions of the Prime Lease.  The remaining allegations are denied as conclusions of law.

207.      Admitted in part and denied in part.  It is admitted that Spring Hill is unwilling to offer the Premises for lease to Dunkin or its franchisee at a price of $18-22 per square foot.  It is denied that $18-22 per square foot would be a fair market price for the Premises.  The spaces identified are not comparable.  The remaining allegations are denied as conclusions of law.

208.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

209.     Denied.  It is denied that the commercial spaces that the Marottas have located are comparable to the Premises.

210.    Denied.  It is denied that Spring Hill is perpetrating a fraud upon the Marottas.  It is denied that the Marottas have been damaged and continue to suffer damages as a direct and proximate cause of action by Spring Hill.  The remaining allegations are denied as conclusions of law.

211.    Denied.  It is denied that the Marottas are entitled to an order restraining Dunkin/TDDR from renewing the current lease with Spring Hill without appropriate protections and without negotiating a fair market lease and amendments to the square footage discrepancies.

212.    Denied.  It is denied that the Marottas are entitled to an Order compelling Dunkin/TDDR to negotiate a new lease for a new location in the Jenkintown area with a landlord at a fair market and commercially reasonable rent.

WHEREFORE, the Third Party Complaint should be dismissed.

## COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT V
### (DUNKIN/TDDR)
### (Breach of Franchise Agreement)

213.    Spring Hill reiterates its previous answers to paragraphs 1 through 212 of the Third Party Complaint as though recited herein verbatim and at length.

214.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

215.    Denied.  The Franchise Agreement is in writing and speaks for itself.

216.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

217.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

218.     Denied.  It is denied that Spring Hill is acting improperly with respect to the CAM charges being assessed under the Prime Lease.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.  The remaining allegations are denied as conclusions of law.

219.     Admitted in part and denied in part.  It is denied that the Marottas have provided Dunkin with "evidence" regarding Spring Hill.  It is admitted that Dunkin' has sought to terminate the Dunkin lease and the Franchise Agreement.

220.     Denied.  It is denied as a conclusion of law that Dunkin's negligent, reckless, intentional actions taken with wanton disregard for the Marottas' rights have damaged and continue to damage the Marottas.

WHEREFORE, the Third Party Complaint should be dismissed.

## COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT VI
### (DUNKIN/TDDR)
### (Fraud-Inducement to Enter into Franchise Agreement)

221.     Spring Hill reiterates its previous answers to paragraphs 1 through 221 of the Third Party Complaint as though recited herein verbatim and at length.

222.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

223.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

224.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

225.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied. The Franchise Disclosure Document is in writing and speaks for itself.

226.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied. The Franchise Disclosure Document is in writing and speaks for itself.

227.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

228.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

229.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

230.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

231.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

232.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

233.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

234.     Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

235.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

236.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

237.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

238.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

239.    Denied.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied.

WHEREFORE, the Third Party Complaint should be dismissed.

## COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT VII
### (SPRING HILL)
### (Tortious Interference with the Franchise Agreement/Dunkin Lease)

240.    Spring Hill reiterates its previous answers to paragraphs 1 through 239 of the Third Party Complaint as though recited herein verbatim and at length.

241.    Denied.  It is denied that Spring Hill has intentionally breached the Prime Lease. It is denied that Spring Hill has intentionally breached any obligations to the Marottas.  The remaining allegations are denied as conclusions of law.

242.    Denied.  It is denied that the Marottas have made overpayments of CAM charges. It is denied that the Marottas have covered expenses not reasonably and properly includable as CAM.  It is denied that Spring Hill has failed to provide any refunds related to overpayments of CAM.  It is denied that Spring Hill has placed the Marottas in an unreasonable and precarious financial position.  After reasonable investigation, Spring Hill is without sufficient information to

form a belief as to the truth of the allegations, and the same are therefore denied.  The remaining allegations are denied as conclusions of law.

243.    Denied.  It is denied that Spring Hill has caused the Counterclaimant to breach its lease with Dunkin that has caused the termination of the Franchise Agreement as well.  The remaining allegations are denied as conclusions of law.

244.    Denied.  It is denied that Spring Hill has engaged in commercially unreasonable and improper action.  After reasonable investigation, Spring Hill is without sufficient information to form a belief as to the truth of the allegations, and the same are therefore denied. The remaining allegations are denied as conclusions of law.

245.    Denied.  It is denied as a conclusion of law that Spring Hill has acted negligently, recklessly, intentionally and with wanton disregard for the Marottas' rights and has caused damage and continues to damage the Marottas as a direct and proximate result of their actions.

WHEREFORE, the Third Party Complaint should be dismissed.

## COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT VIII
### (Dunkin/TDDR/Spring Hill)
### (Tortious Interference with the Prospective Business Advantage)

246.-265.    Count VIII of the Third Party Complaint has been dismissed by Order of Court dated July 15, 2013, and therefore no response is required.

## COUNTERCLAIM/THIRD PARTY COMPLAINT-COUNT IX
### (Dunkin/TDDR)
### (Injunctive Relief--to Reinstate The Franchise Agreement Pending Disposition)

266.-274.    Count IX of the Third Party Complaint sets for a form of relief as opposed to a separate claim, and has been rendered moot in any event by effect of the Court's Order dated May 16, 2013, pursuant to which the Third Party Plaintiffs were enjoined from holding themselves out as authorized Dunkin' Donuts and Baskin-Robbins brand franchisees and from

occupying the Premises.  Moreover, the allegations under this Count are redundant to and duplicative of the prior allegations of the Third Amended Complaint.  Therefore, no response is required.

### AFFIRMATIVE DEFENSES

275.    The Third Party Complaint fails to state a claim upon which relief can be granted.

276.    The Third Party Plaintiffs have unclean hands.

277.    The third party claims are barred by the doctrine of unclean hands.

278.    The third party claims are barred by the statute of limitations.

279.    The third party claims are barred by the parol evidence rule.

280.    The third party claims are barred by the statute of frauds.

281.    The third party claims are barred by the doctrine of waiver.

282.    The third party claims are barred by the doctrine of estoppel.

283.    The third party claims are barred by the doctrine of laches.

WHEREFORE, the Third Party Complaint should be dismissed.

### CROSS-CLAIM
**(Spring Hill Realty, Inc. v. DB Real Estate Assets I, LLC**
**and Third Dunkin' Donuts Realty, Inc.)**
**(Indemnity/Contribution)**

1.    In or about March of 2002, Third Dunkin' Donuts Realty, Inc. ("TDDR") entered into a lease agreement ("Prime Lease") with Spring Hill Realty, Inc. ("Spring Hill") for possession of a certain portion of Spring Hill's shopping center located at 505 Old York Road, Jenkintown, Pennsylvania ("Leased Premises").

2.    On or before June 17, 2012, TDDR assigned its tenant interest in the Prime Lease to its corporate affiliate, Plaintiff DB Real Estate Assets I, LLC ("DB Real Estate").

3.     TDDR drafted the Prime Lease, and TDDR principally designed and built the Dunkin' Donuts/Baskin Robbins store on the Leased Premises.

4.     TDDR provided the square footage measurements for the Leased Premises that are included in the Prime Lease, and said measurements were derived from a floor plan prepared for the Leased Premises by TDDR's engineer.

5.     To the extent Spring Hill may be found to have made any representations to Third Party Plaintiffs regarding the square footage of the Leased Premises, through the Prime Lease or otherwise, Spring Hill only made said representations in reasonable reliance upon the information provided to it by TDDR or DB Real Estate in connection with the Prime Lease.

6.     In calculating CAM charges and reconciliations for the Leased Premises under the Prime Lease, Spring Hill reasonably relied upon the square footage information provided to it by TDDR or DB Real Estate in connection with the Prime Lease.

7.     To the extent that the square footage measurements for the Leased Premises are found to be inaccurate, Third Party Defendant TDDR or its assignee Plaintiff DB Real Estate is solely liable for said inaccuracy and for any losses that may be found to have resulted to Third Party Plaintiffs therefrom.

8.     Either TDDR or DB Real Estate is liable to Spring Hill by way of contribution or indemnity for any damages on the causes of action alleged in the Third Party Complaint to have resulted from inaccurate square footage measurements for the Leased Premises.

WHEREFORE, if any liability may be found on the causes of action asserted in the Third Party Complaint, which liability is expressly denied, Third Party Defendant Spring Hill Realty, Inc. is entitled to judgment by way of contribution or indemnity as against Plaintiff DB Real Estate Assets I, LLC or Third Party Defendant Third Dunkin' Donuts Realty, Inc., or both.

BARLEY SNYDER LLP

Date: _____          BY: __/s/ Joshua J. Knapp_____
                           Joshua J. Knapp, Esq. (Court ID No. 92123)
                           Attorneys for Third Party Defendant
                           126 East King Street
                           Lancaster, PA  17602
                           (717) 299-5201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document is being filed through the Court's ECF System and is available for viewing and being served electronically through the Court's ECF System upon Plaintiff as follows:

Ayesha Hamilton, Esquire
Hamilton Law Firm PC
1816 West Point Pike, Suite 114
Lansdale, PA  19446
*Attorneys for Defendants/Third Party Plaintiffs*

Craig R. Tractenberg, Esquire
Nixon Peabody LLP
437 Madison Avenue
New York, NY  10022
*Attorneys for Plaintiffs/Third Party Co-Defendant*

BARLEY SNYDER LLP

/s/ Joshua J. Knapp
By:_____
Joshua J. Knapp, Esquire
Court I.D. No. 92123
126 East King Street
Lancaster, PA  17602-2893
(717) 299-5201
*Attorneys for Third Party Defendant
   Spring Hill Realty, Inc.*