IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DUNKIN' DONUTS FRANCHISED RESTAURANTS, LLC, et. al.,** : |
| : |
| **Plaintiffs,** : |
| : |
| v. : |
| : |
| **CLAUDIA I, LLC, et. al** : |
| : |
| **Defendants;** : |
| : |
| *and* : Civil Action 12-2010 |
| : |
| **CLAUDIA I, LLC, et. al.** : |
| : |
| **Third Party Plaintiffs** : |
| : |
| v. : |
| : |
| **SPRING HILL REALTY, INC., et. al.** : |
| : |
| **Third Party Defendants.** : |

**MEMORANDUM**

**STENGEL, J.**                                                                                             **February 10, 2014**

This dispute involves a franchising relationship gone awry. Plaintiffs, Dunkin' Donuts Franchised Restaurants, LLC, DD IP Holder, LLC, Baskin-Robbins Franchised Restaurants, LLC and DB Real Estate Assets I, LLC (Collectively "Dunkin'") filed this action against its Franchisee Claudia I LLC and its members Manfred and Lynne Marotta ("Claudia" or "the Marottas")seeking relief for breach of the franchise agreement.[1]

---

[1] Plaintiffs are the exclusive licensees of numerous federal registrations for the mark Dunkin' Donuts, Baskin-Robbins, or derivations thereof, as well as numerous other trademarks. See The United States Patent and Trademark

Claudia answered the complaint and filed a counterclaim against Dunkin'. Claudia also filed a third party complaint against Third Dunkin Donuts Realty, Inc. ("TDDR") and Spring Hill Realty, Inc. ("Spring Hill"). Dunkin' and TDDR now move for summary judgment on Claudia's counterclaim and third party complaint. For the reasons that follow, I will partially grant Dunkin's motion.

I.     **Background**

The Dunkin' Donuts store that is at the center of this franchise dispute was located at 505 Old York Road in Jenkintown, Pennsylvania. Pls.' Statement of Undisputed Facts (doc. no. 69) ¶ 3. This property is owned by Spring Hill. Prime Lease, Certification of Manfred Marotta ("Certification") Ex. B (doc. no. 77-20). TDDR and Spring Hill executed a lease ("the prime lease") for the Jenkintown property on March 1, 2002. Id. TDDR entered into a sublease for the premises with the original franchisee on December 20, 2002. Sublease, Certification Ex. C (doc. no. 77-3). Thereafter, TDDR merged into DB Real Estate Assets I, LLC and DB Real Estate became the sublandlord for the store. Pls.' Statement of Undisputed Facts ¶ 9. On July 16, 2009, Claudia purchased the franchise and took the seller's tenant interest at the Jenkintown store by a transfer agreement executed by the seller, Claudia and Dunkin'. Transfer Agreement, Decl. of Gary Zullig Ex. B (doc. no 53-2). Claudia and Dunkin' then entered into a franchise agreement. Franchise Agreement, Certification Ex. A (doc,. no. 77-1). Dunkin' reserved

---

Office the trademark DUNKIN' DONUTS at serial numbers 73215289, 76035918 and 73214414, as well as the trademark BASKIN 31 ROBBINS at registration numbers 3124983 and 3124982.

2

the right to terminate the franchise agreement if it terminated the sublease to the store. Id. ¶ 14.2.

Claudia had multiple complaints about Spring Hill and wanted to relocate the store. First, Claudia has presented evidence that Spring Hill failed to maintain the property as required by the prime lease. Defs.' Statement of Undisputed Facts (doc. no. 78) ¶¶ 37-52. As a result, the exterior of the store deteriorated which may have hurt business. Second, Claudia paid a monthly base rent of $8,750 which amounted to $36 per square foot; however, the Marottas found that fair market rent for comparable properties in Jenkintown ranged from $18 to $22 per square foot. Id. ¶ 89; Sublease § 1.8. Finally, Spring Hill was overcharging Claudia for common area maintenance (cam).

Article 17 of the prime lease required Claudia to reimburse Spring Hill for its pro-rata share of cam expenses. Claudia's pro-rata share was calculated by dividing the square footage of the store by the square footage of the Spring Hill's leasable floor area. Prime Lease § 17.2. According to the prime lease, the size of the store was 3,167 square feet, Sublease 12, and Spring Hill's leaseable floor space was 29,384 square feet. Prime Lease § 1.1(h). Claudia conducted an audit of Spring Hill's claimed cam charges and calculated that the actual size of the store was 2,782 square feet and that Spring Hill's leaseable space was 30,094. Siegal & Drossner Audit, Certification Ex. G. (doc. no 77-7). The overstatement of square footage in the lease caused Claudia to pay a higher rate

of cam charges than it actually owed.[2] As a result, Claudia was entitled to reimbursement pursuant to article 17.4 of the prime lease.[3]

As sublessee, Claudia was powerless to resolve its disputes with Spring Hill.[4] Further, Claudia was at Dunkin's mercy to make a good deal on a lease for the store's location when the prime lease expired at the end of 2012.[5] Therefore, Claudia requested that Dunkin' relocate the store and seek reimbursement of the cam overcharges. Defs.' Statement of Undisputed Facts ¶¶ 24-31, 68. According to Emails produced during discovery, Dunkin' executives did not dispute that cam charges were overstated. Certification Ex. I (doc. no. 77-9). The executives also agreed that 505 Old York Road was not a good location. Id. Nonetheless, Dunkin' chose to extend the prime lease rather than relocate. First Amendment to Sublease, Certification Ex. K (doc. no 77-11). While the renewed prime lease reduced the base rent and eliminated future cam charges, the deal required that Claudia waive its rights to seek reimbursement for past cam overcharges. Id. Claudia did not accept the new sublease.

---

[2] Claudia's pro rata share when using the square footage from the lease was 10.78%. When using the square footage from the audit, Claudia's pro rata share equaled 9.24%.

[3] The prime lease provides that if "the Common Area Maintenance Expenses are found to be overstated by 5% or more, and as a result Tenant has over paid for Tenant's pro rata share of such expenses by more than fifteen hundred Dollars ($1500), Landlord shall bear the cost of such inspection, excluding the cost of travel and lodging. Landlord shall promptly refund to Tenant any overpayment[.]" Prime lease § 17.4.

[4] Pursuant to the sublease, "All benefits inuring to [Dunkin'] as the tenant under the prime lease are retained by [Dunkin'] unless specifically granted to [Claudia] under this lease." Sublease 10. Such benefits included the right to request reimbursement of cam overcharges and the option to extend the prime lease.

[5] While the prime lease expired in 2012, the sublease required Claudia to remain at 505 Old York Road until 2022. While Dunkin' had flexibility on where to locate starting in 2013, the sublease bound Claudia to operate out of whatever store Dunkin' chose.

The Jenkintown store did not turn a profit. Claudia was unable to generate enough revenue to pay the rent, taxes, cam charges and other operational expenses. Certification ¶¶ 143-44. As a result, Claudia stopped paying rent in 2011. Pls.' Statement of Undisputed Facts ¶ 22. Dunkin' terminated the sublease and the franchise agreement and this action followed. On May 17, 2013, I granted Dunkin's motion for a preliminary injunction requiring Claudia to vacate the Jenkintown store. Shortly thereafter, Dunkin' relocated the store to 445 Old York Road in Jenkintown.[6]

## II.   STANDARD OF REVIEW

A motion for summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party seeking summary judgment initially bears the burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

---

[6] I will take judicial notice of this fact. I may take judicial notice on my own motion of a "fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As an example, a geographical fact such as the location of buildings and businesses may be judicially noticed. See Southerland v. St. Croix Taxicab Ass'n, 315 F.2d 364, 367 (3d Cir. 1963). The fact that the Dunkin' Donuts moved can be readily verified by visiting 505 Old York Road where you will find a for rent sign in the window. You can then travel one block south to find the new franchise at 445 Old York Road. You can also verify the location of Dunkin's Jenkintown store by using Dunkin's store locator on its website http://www.dunkindonuts.com/content/dunkindonuts/en/stores.html?a=19046.

burden of proof at trial." Celotex, 477 U.S. at 322. "Evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

## III. DISCUSSION

### A. Third Dunkin Donuts Realty, Inc.

I will dismiss all claims against TDDR. TDDR was the original lessee on the prime lease and the original sublessor on the sublease. It is undisputed that TDDR merged into plaintiff DB Real Estate Assets I, LLC on May 26, 2006. Pls.' Statement of Undisputed Facts ¶ 9. TDDR no longer exists. Therefore, DB Real Estate Assets I, LLC assumed TDDR's rights to the prime lease and sublease to the Jenkintown store and all liability for the breach of the same. 15 Pa. C. S. § 1929(b); *see also* Pittsburgh Terminal Coal Corp. v. Potts, 92 Pa. Super. 1, 14 (1927) ("legal successor of the original lessor …is entitled to enforce against [lessee] the provisions of the lease….").[7] Since the merger occurred prior to Claudia's third party complaint, Claudia can only maintain this action against DB Real Estate Assets I, LLC which it has achieved by way of it counterclaim. *See* First United Bank & Trust v. PNC Fin. Servs. Grp., Inc., 667 F. Supp. 2d 443, 454 (M.D. Pa. 2009).

---

[7] TDDR and DB Real Estate Assets I, LLC are incorporated under the laws of the Commonwealth of Massachusetts. The Massachusetts Corporation Code produces the same result as Pennsylvania corporate law, *see* Mass. Gen. Laws Ann. ch. 156B, § 80; therefore, I will apply Pennsylvania law. Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006) (citations omitted) ("[W]here the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a "false conflict," and the Court should avoid the choice-of-law question.").

**B.     Counts I and VI – Fraud**

I will enter judgment against Claudia on counts one and six which claim fraud. Claudia alleges several misrepresentations in support of its claims. The various misrepresentations constitute fraud in the inducement of the contract and fraud in the performance of the contract. As Dunkin' argues, Claudia has failed to produce sufficient evidence to support a claim for fraudulent inducement. I also agree with Dunkin' that Claudia's fraud in the performance claim is barred by the gist of the action doctrine. Because the claims require different legal analyses, I will discuss the claims separately.

Claudia alleges that Dunkin' and Spring Hill fraudulently induced it to enter the franchise and sublease by misrepresenting the square footage of the store and by assuring Claudia that the sublease could be renegotiated. A plaintiff claiming fraud in the inducement under Pennsylvania law must establish the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) **made falsely**, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) **justifiable reliance** on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Overall v. Univ. of Pa., 412 F.3d 492, 498 (3d Cir. 2005) (emphasis added) (citing Gibbs v. Ernst, 647 A.2d 882, 889 (1994)). Since Claudia can point to no evidence of reliance or falsity, it has not established a prima facie case for fraud in the inducement.

Claudia cannot claim fraud based on the misrepresented square footage because the Marrottas suspected the square footage was overstated. A person who believes that a representation is false cannot seriously say they reasonably relied on the representation.

7

*See* In re Thorne's Estate, 25 A.2d 811, 816 (Pa. 1942) ("A person … who acquiesces in a proposal which he believes to be wrongful and disadvantageous deprives himself of the plea of fraud when later he finds that he has been hurt."). Mr. Marrotta testified that he and his wife suspected that the square footage in the lease was overstated. Dep. of Manfred Marotta, Certification Ex. E (doc. no. 77-5) 8: 8-16. Claudia points to no evidence in the record to put this fact in dispute. Thus, Claudia cannot establish the reasonable reliance element of a fraud claim.

Any representations by Dunkin' employees that the sublease could be renegotiated is also not actionable in fraud. A statement as to future plans or intentions will not satisfy the falsity element of fraud unless the speaker knowingly misstates his true state of mind. Nat'l Data Payment Sys., Inc. v. Meridian Bank, 212 F.3d 849, 858 (3d Cir. 2000) (citing College Watercolor Group, Inc. v. William H. Newbauer, Inc., 468 Pa. 103, 360 A.2d 200, 206 (1976)). Here, Dunkin's representation is a promise to do something in the future. Since Dunkin' did offer Claudia a new and more favorable sublease in 2012, any pre-agreement representations could not have been knowingly false. Claudia has not produced any evidence to place this fact in dispute. Summary judgment is appropriate.[8]

With regard to the claim for fraud in the performance, Claudia offers evidence of five misrepresentations made by Dunkin', but these claims are barred by the gist of the

---

[8] Because I find that the alleged representations by the Dunkin' employees lacked the required element of falsity, I do not reach the question of whether the statements are barred by the parol evidence rule as Dunkin' argues.

action doctrine.[9] When a plaintiff pleads fraud in the performance of a contract, Pennsylvania courts analyze the claims to determine if they sound in tort or if they are truly contract claims.[10] Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 103 (3d Cir. 2001). "[A] claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (quoting Bohler-Uddeholm, 247 F.3d at 104). Here, Claudia claims that Dunkin' had a duty to act in good faith and deal fairly. Claudia also alleges that Dunkin' had a duty to negotiate with Spring Hill regarding rent, square footage, cam fees and maintenance. In the alternative, Claudia believes that Dunkin' should have allowed Claudia to relocate. However, Dunkin' had no such duty to act independent of the sublease and franchise agreement. These claims are inextricably linked to the contract. As discussed *infra*, Claudia may prosecute these claims under a breach of contract theory, but the gist of the action doctrine bars her from asserting a fraud claim as well. eToll, Inc., 811 A.2d at 20-1 (prohibiting a fraud claim which would "essentially duplicate a breach of contract action").

---

[9] Claudia alleges Dunkin' misrepresented it would: 1.) act in good faith and deal fairly; 2.) assist Claudia once Claudia performed a square footage audit; 3.) compel Spring Hill to maintain the shopping center; 4.) consider relocation and or renegotiation; 5.) compel Spring Hill to change square footage in lease and refund overcharges.

[10] The Pennsylvania Supreme Court has not applied the gist of the action doctrine to fraud claims; therefore, I must predict how the Pennsylvania Supreme Court would decide the issue. Klein v. Weidner, 729 F.3d 280, 283 (3d Cir. 2013) (citations omitted). The Pennsylvania Superior Court and the Third Circuit have predicted that the Supreme Court would apply the gist of the action doctrine to fraud claims, and I will do the same. Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 548 (3d Cir. 2010) (citing Bohler–Uddeholm, 247 F.3d at 103–04); eToll, Inc., 811 A.2d at 20.

While Spring Hill has not moved for summary judgment, I will enter judgment in favor of Spring Hill as well.  A district court may "enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."  Celotex , 477 U.S. 317, 326, (1986).  Claudia argues its motion as if Spring Hill has moved for summary judgment as well.  Claudia offers evidence that Spring Hill fraudulently induced it to enter into the sublease by misrepresenting the store's square footage.  It also offers various facts showing that Spring Hill committed fraud in the performance of the contract.[11]  As discussed above, these facts are not actionable fraud because the Marottas did not rely on the statements or the claims are barred by the gist of the action doctrine.  Therefore, I will dismiss Claudia's entire claim for fraud.

### C.     Count II - Civil Conspiracy

I will enter judgment against Claudia on its claim for civil conspiracy.  The elements of the state law claim for civil conspiracy are: 1.) an agreement between two or more persons; 2.) to do an illegal act or to do a legal act by unlawful means; 3.) malice.  *Eg.* Skipworth by Williams v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997) (citations omitted).  However, in order to proceed with a civil conspiracy action, Claudia must also have a valid fraud claim.  *See* McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (citations omitted) (holding that a plaintiff claiming civil conspiracy must also include a cause of action for the particular act which the defendants

---

[11] Claudia alleges that Spring Hill misrepresented: 1.) that all tenants paid CAM charges; 2.) that it would use cam charges to maintain the shopping center; 3.) that it would not use CAM charges to pay for capital expenses and taxes.

conspired to commit). Since Claudia has not produced sufficient evidence to allow its fraud claim to proceed to trial, its claim for civil conspiracy fails as well.

### D. Counts III and V - Breach of Contract

Dunkin' moves for summary judgment on counts three and five which allege breach of the sublease, prime lease and franchise agreement. Dunkin' argues that Claudia cannot identify any express provisions in the agreements which Dunkin' breached. Claudia rebuts Dunkin's argument by producing evidence that Dunkin' breached the implied duty of good faith and fair dealing. Claudia has sustained its burden on summary judgment. Counts three and five will proceed to trial.

In order to protect the reasonable expectations of the parties, Pennsylvania law requires a franchisor to deal with its franchisees in "good faith and in a commercially reasonable manner." Atl. Richfield Co. v. Razumic, 390 A.2d 736, 742 (Pa. 1978). Bad faith includes: "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Somers v. Somers, 613 A.2d 1211, 1213 (1992) (citing Restatement (Second) of Contracts § 205(d)). The Superior Court has also applied the doctrine of necessary implications, which is similar to the implied duty of good faith and fair dealing, to commercial leases.[12] Slater v. Pearle Vision Center, Inc., 546 A.2d 676 (Pa. Super.1988). According to this

---

[12] The Pennsylvania Supreme Court has not specifically addressed whether it would imply a duty of good faith and fair dealing to commercial leases; therefore, I must predict how the Pennsylvania Supreme Court would rule on the issue. Klein v. Weidner, 729 F.3d 280, 283 (3d Cir. 2013) (citations omitted). Based on the decisions of the Superior Court, I predict that the Supreme Court would extend these principles to commercial leases. See Kamco Indus. Sales, Inc. v. Lovejoy, Inc., 779 F.Supp.2d 416, 424 – 427 (E.D. Pa. 2001)

alternative theory, "the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." Frickert v. Deiter Bros. Fuel Co., Inc., 347 A.2d 701, 705 (1975) (Pomeroy, J., concurring) (citing D. B. Van Campen Corp. v. Building and Const. Trades Council of Phila., 195 A.2d 134, 136 (Pa. Super. 1963)).

    Claudia has produced sufficient evidence for a reasonable jury to find that Dunkin' breached its duty of good faith and fair dealing. Pursuant to the sublease, Dunkin' reserved the right to extend the lease and to seek reimbursement for cam overcharges. As a result, Dunkin' controlled where Claudia located its franchise. Consistent with the duty of good faith and fair dealing, Dunkin' was required to act in a commercially reasonable manner when selecting a location for the franchise. Rent and cam charges consumed 18% of Claudia's gross sales compared to an average rate of 7-10% in the Philadelphia area. Certification at ¶¶ 109, 110. Further, evidence that Dunkin' executives considered 505 Old York Road to be a bad location supports a conclusion that Dunkin' acted in bad faith by renewing the Spring Hill lease. The fact that Dunkin' did relocate the franchise when it took control of the store is even more suggestive of bad faith. As Claudia's failure to make payments required by the sublease allowed Dunkin' to terminate the franchise agreement, a jury could reasonably conclude that a breach of the duty of good faith and fair dealing on the sublease implicates a breach of the franchise agreement as

well. Therefore, I will deny summary judgment as to Claudia's breach of contract claims.

### E. Count IV – Injunctive Relief

Claudia's fourth count seeks to enjoin Dunkin' from renewing its lease with Spring Hill. However, as Dunkin' points out, an injunction is not an independent cause of action, it is a remedy. Claudia offers nothing in response. Therefore, Claudia fails to sustain its burden on Summary Judgment. Further, Dunkin's termination of the Spring Hill lease and relocation to another store makes this count moot. I will dismiss this count.

### F. Count VIII – Tortious Interference with Prospective Business Advantage

I will enter judgment against Claudia on its count for tortious interference with prospective business advantage. "To prevail on a claim of intentional interference with prospective contractual relations under Pennsylvania law, [Claudia] must show the following: (1) a **prospective contractual relation**; (2) **the purpose or intent to harm the plaintiff** by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997) (emphasis added) (citing Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (1979)). Dunkin' argues that Claudia has produced no evidence of a prospective contractual relation nor wrongful conduct by Dunkin', and Claudia fails to

offer any evidence to the contrary.[13]  Rather, Claudia insists that Spring Hill's conduct led to the termination of the franchise agreement.[14]  Claudia's response does not rebut Dunkin's motion because the franchise agreement is an existing contract, not a prospective contract.  Additionally, the argument does not address whether Dunkin' intended to harm Claudia; rather, it only discusses Spring Hill's wrongful conduct.  By failing to rebut Dunkin's argument, Claudia fails to meet its burden to survive summary judgment on this claim.  As I have already granted Spring Hill's motion to dismiss count eight of the amended complaint, I now dismiss count eight in its entirety.

## IV   CONCLUSION

For the foregoing reasons, I will grant Dunkin's motion for summary judgment as to counts one (fraud in the performance), two (civil conspiracy), four (injunction), six (fraud in the inducement) and eight (tortious interference with prospective contractual relations).  I will also grant summary judgment, on my own motion, in favor of Spring Hill as to counts one and two.  Counts three (breach of lease/sublease), five (breach of franchise agreement) and seven (tortious interference with contract) will proceed to trial.

---

[13] Claudia's citation to Fineman v. Armstrong World Indus., 980 F.2d 171 (3d Cir 1992) is unavailing.  Fineman interprets New Jersey law.

[14] This argument would support a claim against Spring Hill for tortious interference with the franchise agreement.  Claudia asserts exactly such a claim in count seven which suggests that count eight is merely duplicative.  Since Spring Hill has not moved for Summary Judgment on count seven, Claudia's claim for tortious interference against Spring Hill will proceed to trial.